Marilyn Gayle DIAL *v.* Jesse Randal DIAL

CA 00-864                                               44 S.W.3d 768

Court of Appeals of Arkansas
Division II
Opinion delivered May 23, 2001

*Michael E. Todd, P.A.*, by: *Michael E. Todd*, for appellant.

*Donis B. Hamilton*, for appellee.

ANDREE LAYTON ROAF, Judge. In this case, we are asked to review the chancellor's division of property pursuant to a divorce. Two particular matters are at issue: 1) whether appellant Marilyn Dial is entitled to an interest in appellee Jesse Dial's deferred retirement option plan, and 2) whether Marilyn Dial is entitled to an interest in a home owned by Jesse Dial prior to the marriage. We affirm the chancellor's ruling with regard to the home, but reverse his ruling on the deferred retirement option plan.

Marilyn and Jesse Dial were divorced on April 5, 2000, after fourteen years of marriage. In the divorce decree, the chancellor divided the couple's marital and nonmarital property in a relatively equal manner. Among the items designated as nonmarital property were a home owned by Mrs. Dial prior to marriage and a home owned by Mr. Dial prior to marriage. Each party was awarded his or her home, free and clear of the other's interest. Most of the other property that had been owned by Mr. and Mrs. Dial was divided as marital property, including a checking account, certain funds in a credit union account, a certificate of deposit, a prepaid burial account, and each party's retirement benefits. Mr. Dial was awarded a 50 percent interest in Mrs. Dial's monthly retirement benefits, and Mrs. Dial was awarded a 22.5 percent interest in Mr. Dial's monthly retirement benefits, which represented her one-half interest in those benefits that accrued during the marriage. However, Mrs. Dial was awarded no interest in Mr. Dial's deferred retirement option plan (DROP) account. On appeal, she contends that the chancellor erred in failing to award her a share of the DROP account and that he erred in failing to award her any interest in the home Mr. Dial owned prior to marriage.

Before reaching the merits of the case, we address the issues presented by appellee Jesse Dial's motion to dismiss the appeal. According to Mr. Dial, Mrs. Dial has accepted certain benefits under the divorce decree, thereby rendering moot the issues she now raises on appeal. In particular, he refers to her receipt of $13,019.83, representing her share of the above-mentioned cash accounts, and her procurement of a qualified domestic relations order (QDRO) entitling her to 22.5 percent of his monthly retirement benefits.

In support of his motion, Mr. Dial cites the cases of *Hendrix v. Winter*, 70 Ark. App. 229, 16 S.W.3d 272 (2000), *DeHaven v. T & D Dev., Inc.*, 50 Ark. App. 193, 901 S.W.2d 30 (1995), and *Lyle v. Citizen's Bank of Batesville*, 4 Ark. App. 294, 630 S.W.2d 546 (1982), all of which stand for the proposition that if an appellant voluntarily pays a judgment, then an appeal from that judgment is moot. These cases are not applicable, however, because Mrs. Dial is not appealing from a judgment she has paid. More on point are those cases that recognize that an appellant waives her right to appeal once she accepts a benefit that is inconsistent with the relief she seeks on appeal. See *Wilson v. Fullerton*, 332 Ark. 111, 964 S.W.2d 208 (1998); *Shepherd v. State Auto Prop. & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993); *Thomas v. Thomas*, 68 Ark. App. 196, 4 S.W.3d 517 (1999). The general purpose behind the rule set forth in *Wilson, Shepherd,* and *Thomas* is that a party should not be able to enjoy the fruits of a judgment and at the same time appeal that judgment. See *Reynolds v. Reynolds*, 861 S.W.2d 825 (Mo. App. 1993). However, courts have applied this rule less strictly in divorce cases. See *id.*; see also 5 AM. JUR. 2D *Appellate Review* § 636 (2d ed. 1995).

In *Thomas v. Thomas, supra,* we held that a person may accept part of the benefits of a divorce decree and appeal the remainder, if the part accepted and the part appealed from are independent. Here, the issues appealed from are undoubtedly independent of the cash benefits that Mrs. Dial has accepted as her share of certain marital accounts. The question is closer as to the retirement benefits awarded to her by the QDRO. Nevertheless, we do not find Mrs. Dial's action in seeking the QDRO to be inconsistent with her arguments on appeal. There is no question that she is entitled to receive 22.5 percent of Mr. Dial's *general* retirement benefits, no matter what the outcome of this appeal. Therefore, she was within her rights to ensure her ability to begin receiving those benefits upon Mr. Dial's retirement.

■ Mr. Dial argues further that, by accepting benefits under the judgment, Mrs. Dial has restricted our ability and the chancellor's ability to exercise flexibility in property division, should we determine that error occurred below. In reviewing this case, we have not found that to be a concern. The chancellor divided all marital property equally, returned to each party the property he or she owned prior to marriage, and awarded no alimony or child support that might be affected by a change in property division. Under the facts of this particular case, Mrs. Dial's acceptance of benefits pending appeal has not impeded our ability, nor should it impede the chancellor's ability, to effect an equitable division of property upon reversal. The motion to dismiss is denied.

Turning now to the merits of the case, the first issue concerns Mrs. Dial's claim to a share of Mr. Dial's DROP account. During the parties' marriage, Mr. Dial was an employee of the Arkansas State Highway and Transportation Department. On October 21, 1998, after thirty years of service, Mr. Dial became eligible for retirement. However, instead of retiring, he continued to work for the Highway Department and began participating in the Arkansas State Highway Employees' Deferred Retirement Option Plan. This plan allows an employee to continue working for up to five years while receiving retirement benefits as though he were retired. *See* Ark. Code Ann. §§ 24-5-201 to 204 (Repl. 2000). Those benefits are placed into an account and, when the employee actually retires, he may withdraw the accumulated benefits either as a lump sum or in annuity payments. Beginning in October 1998, monthly payments of $1,768.97 were placed into Mr. Dial's DROP account. As of December 31, 1999, the balance in the account was $25,609.10.

■ With respect to the division of property in a divorce case, we review the chancellor's findings of fact and affirm unless those findings are clearly erroneous. *Jablonski v. Jablonski*, 71 Ark. App. 33, 25 S.W.3d 433 (2000). A finding is clearly erroneous when, although there is evidence to support it, we are left, on the entire evidence, with a firm conviction that a mistake has been committed. *Hoover v. Hoover*, 70 Ark. App. 215, 16 S.W.3d 560 (2000).

In his initial letter ruling, the chancellor did not refer to the funds in Mr. Dial's DROP account. Instead, he simply divided Mr. Dial's retirement benefits by splitting them proportionally according to the number of years of marriage (fourteen) that coincided with the number of years of Mr. Dial's service (thirty), resulting in a figure of 45 percent. Mrs. Dial's one-half share was then determined to be 22.5 percent. This is the method approved by our supreme court in *Young v. Young*, 288 Ark. 33, 701 S.W.2d 369

(1986), and *Marshall v. Marshall*, 285 Ark. 426, 688 S.W.2d 279 (1985). Following entry of judgment, Mrs. Dial apparently asked for clarification regarding the funds in the DROP account. The chancellor then addressed the issue and declined to award her a separate interest in the account.

■■ Mrs. Dial argues on appeal that she should have been awarded 50 percent of the funds held by Mr. Dial in his DROP account at the time of the divorce. We agree. Had the funds in the DROP account been paid directly to Mr. Dial during the marriage and placed by him into an ordinary savings account, they would unquestionably be considered marital property subject to division. The fact that Mr. Dial has chosen to postpone enjoyment of those funds does not destroy Mrs. Dial's interest in them. *See Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1984). We therefore hold that any money accumulated in the DROP account during the marriage, that is, prior to entry of the April 5, 2000 divorce decree, constitutes marital property of which Mrs. Dial is entitled to a 50 percent interest. Marital property means all property acquired subsequent to marriage, with certain exceptions not applicable here. *See* Ark. Code Ann. § 9-12-315(b) (Repl. 1998). Further, it is proper to ascertain the extent of marital property and evaluate it as of the time of divorce. *See Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987).

■ In light of our holding, we reverse and remand with directions to the chancellor to award Mrs. Dial her 50 percent interest in the money accumulated in the DROP account as of April 5, 2000, and to amend any orders or decrees, including QDROs, to the extent necessary to comply with this opinion.

The remaining issue on appeal concerns the chancellor's decision not to award Mrs. Dial any interest in Mr. Dial's home that he owned prior to the marriage. Mr. Dial and his former wife (now deceased) purchased their home in 1977, with the aid of a twenty-year, $25,000 mortgage. Mrs. Dial and her former husband purchased their home in 1980. Mrs. Dial obtained the home in a divorce in 1984 and refinanced it with a $23,000 mortgage in 1985. Upon the marriage of Mr. and Mrs. Dial, they decided to live in Mr. Dial's home. Mrs. Dial rented her home for $300 to $400 per month throughout the marriage. The monthly rent payments were enough to cover the mortgage payments and the house's insurance and taxes.

Several improvements were made to Mrs. Dial's house during the marriage, including the installation of a concrete slab and awning in the backyard, installation of central heat and air, new carpet and linoleum, repainting four times, and installation of a new roof (for which insurance paid one-half). Improvements were also made to Mr. Dial's house during the marriage, including the construction of a shop building, installation of central heat and air, new carpet, refinishing of walls and cabinets, enclosing the carport, and new windows and doors. In addition, there was considerable debt reduction on both houses. Mr. Dial's mortgage was paid off in 1997; Mrs. Dial's was nearly paid off at the time of the divorce.

The chancellor found that both parties' homes were of nearly equal value with about equal debt reduction and that approximately the same amount of marital funds had been expended on each house. He therefore ordered that each party have the house that he or she owned prior to marriage free from the other's interest. Mrs. Dial contends that the chancellor erred because, while the debt reduction and improvements on her house were paid for by rentals generated by the house, the debt reduction and improvements on Mr. Dial's house were paid for with marital funds.[1]

A chancellor is given broad powers to distribute both marital and nonmarital property to achieve an equitable division. *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993). At the time of the divorce, all nonmarital property shall be returned to the party who owned it prior to marriage unless the court shall make some other division it deems equitable. *See* Ark. Code Ann. § 9-12-315(a)(1)(B)(2) (Repl. 1998). However, a chancellor may find that a non-owning spouse is entitled to some benefit by reason of marital funds having been used to pay off debts on the owning spouse's property, *Box v. Box, supra*, or by reason of marital funds having been used to improve the owning spouse's property. *See Camp v. Camp*, 18 Ark. App. 87, 710 S.W.2d 842 (1986). Our property division statute does not require mathematical precision in property distribution but only that property be distributed equitably. *See Hoover v. Hoover, supra.* The statute applies to the distribution of both marital and nonmarital property.

We cannot say that the chancellor's division of nonmarital property in this case was clearly erroneous. There was testimony from Mr. Dial that, at times, the rentals generated by Mrs. Dial's house were not enough to pay for the improvements and repairs to

---

[1] It is noted that Mrs. Dial also had the benefit of living in the house.

the house. Further, the parties maintained separate checking accounts beginning five or six years into the marriage and, according to Mr. Dial, the debt reduction and improvements on his home were paid for strictly by him from that time forward. The chancellor's balancing of equities on this matter will not be disturbed.

Affirmed in part; reversed and remanded in part.

GRIFFEN and VAUGHT, JJ., agree.