2009 Ark. App. 273

**George T. RANSOM, Appellant,**

v.

**Lyndel L. RANSOM, Appellee.**

**No. CA 08–1235.**

Court of Appeals of Arkansas.

April 15, 2009.

Rice & Adams, by: Scott A. Scholl, Jacksonville, for appellant.

Janet K. Moore, PLC, by: Janet K. Moore, Hot Springs, for appellee.

JOHN MAUZY PITTMAN, Judge.

Appellant George Ransom seeks reversal of a divorce decree. He argues that his former wife, appellee Lyndel Ransom, failed to prove grounds for divorce and that the circuit court erred in dividing the couple's property. Appellee also challenges the court's division of property but states that she will not pursue her cross-appeal unless we reverse on direct appeal. We affirm on direct appeal, which renders the cross-appeal moot.

### Standard of Review

We review domestic-relations cases de novo on the record, but we will not reverse the circuit court's findings unless they are clearly erroneous. *Hunter v. Haunert,* 101 Ark.App. 93, 270 S.W.3d 339 (2007). A circuit court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Id.*

### Proof of Grounds

Appellee sued appellant for divorce on the ground of general indignities. *See* Ark.Code Ann. § 9–12–301(b)(3)(C)

(Repl.2008). To obtain a divorce on this ground, the plaintiff must show a habitual, continuous, permanent, and plain manifestation of settled hate, alienation, and estrangement on the part of one spouse, sufficient to render the condition of the other intolerable. *Poore v. Poore*, 76 Ark. App. 99, 61 S.W.3d 912 (2001). Such manifestations may consist of rudeness, unmerited reproach, contempt, studied neglect, and open insult. *See Pomraning v. Pomraning*, 13 Ark.App. 258, 682 S.W.2d 775 (1985). Mere uncongeniality and quarrelsomeness, without more, are not sufficient to sustain a charge of indignities. *Poore, supra.* Additionally, testimony by the plaintiff and corroborating witnesses that is merely general or conclusory in nature is not sufficient. *See Dee v. Dee*, 99 Ark.App. 159, 258 S.W.3d 405 (2007); *Harpole v. Harpole*, 10 Ark.App. 298, 664 S.W.2d 480 (1984); *Copeland v. Copeland*, 2 Ark.App. 55, 616 S.W.2d 773 (1981). The circuit court's finding of general indignities must be based on factual testimony and proof of specific acts and language showing the rudeness, contempt, and indignities complained of. *Poore, supra* (quoting *Bell v. Bell*, 105 Ark. 194, 150 S.W. 1031 (1912)).

Appellant contends that appellee's evidence of grounds consisted of little more than a few minor incidents that occurred while he was under stress due to health and family problems. Appellant has understated appellee's proof. Appellee testified that she and appellant played golf every Friday and that his anger over her golf game reduced her to tears each week. Appellant's conduct toward appellee on the golf course was confirmed by witnesses Betz Windsor and Faye Taylor. Taylor testified that she once observed appellant come onto the golf course while appellee was playing in a ladies' league and scream at appellee so loudly that Taylor could hear him from across the fairway. According to Taylor, appellant continued to chastise appellee after she took her next shot, which left appellee "sobbing and shaking."

Appellee also testified to appellant's conduct outside the golf course. She recounted one incident in which she and appellant drove separate cars home to Hot Springs from Little Rock. Appellee could not keep up with appellant's rapid driving in heavy traffic, and he motioned for her to pull over to the side of the road. Appellee did so and, according to her, appellant ran toward her vehicle, "tore the door open" and "started screaming and cussing at me about what was wrong with the blankety-blank car, I told you to stay up with me and his language and his demeanor toward me was horrible." Appellee said that when they arrived home, appellant left without saying where he was going. Appellee further testified that, during this same period, she heard appellant talking on his cell phone downstairs in the middle of the night and that he would not disclose to whom he was speaking. She also found, under a mat in the back of her vehicle, a birthday card containing a romantic message to appellant from a woman of their acquaintance. Appellee additionally said that she was afraid of appellant because he had started carrying a gun and that "he left our home day after day for hours on end not letting me know where he was going." Further, appellee said that appellant gambled regularly and that he often made large cash withdrawals. She stated that she could not account for at least $77,000 of their joint funds.

Appellee's witnesses described appellant as domineering, loud, and demanding. Teresa Cummings stated that appellee had once been "a leader in our community" but that she had become nervous and withdrawn, though Cummings acknowledged

that appellee's health problems might have caused her to be a little more soft-spoken than in the past. Patsy Crocker testified that appellant treated appellee "like a maid" and that appellee had lost her self-esteem.

Given the above testimony, we cannot say that the circuit court clearly erred in granting appellee a divorce on the ground of general indignities. Appellee and her witnesses offered fully developed, narrative accounts of appellant's conduct, citing specific acts and language. They also testified in detail to the effect of appellant's conduct on appellee. As a result, appellee's proof far exceeded that in *Dee, supra,* and *Harpole, supra,* where we reversed divorce decrees that were based solely on the plaintiffs' short responses to their attorneys' inquiries about indignities. Appellee's proof also surpasses that in *Poore, supra.* There, we affirmed a circuit court's dismissal of a divorce complaint after the plaintiff proved nothing more than a continuing disagreement over the husband's job decision. By contrast, appellee showed that appellant frequently directed his wrath toward her in a manner that embarrassed, humiliated, and frightened her; that appellant publicly and privately harangued appellee over minor matters; that appellant acted in a dismissive and suspicious manner by leaving the house for hours without explanation, making a late-night phone call without saying to whom he was speaking, and being in possession of a romantic card from another woman; that appellant gambled frequently; and that appellee could not account for a large portion of the couple's joint funds. Even if no single one of these incidents, standing alone, would constitute grounds for divorce, the incidents together produce a cumulative effect sufficient to support the ground of general indignities. *See generally Moore v. Davidson,* 85 Ark.App. 104, 145 S.W.3d 833 (2004). We therefore affirm the circuit court's decision to grant a divorce.

### *Property Division*

■ Prior to the marriage, appellee owned homes on Pineapple Drive and Arlington Road. She and appellant lived at the Arlington Road home during the marriage. Appellant argues that the circuit court erred in failing to award him an interest in these properties.

■ A party to a divorce is ordinarily entitled to the return of his or her premarital property. *See* Ark.Code Ann. § 9–12–315(a)(1)(B)(2) (Repl.2008). However, the circuit court may find that a non-owning spouse is entitled to some benefit by reason of marital funds being used to improve or reduce the debt on the owning spouse's property. *See Box v. Box,* 312 Ark. 550, 851 S.W.2d 437 (1993); *Dial v. Dial,* 74 Ark.App. 30, 44 S.W.3d 768 (2001); *Camp v. Camp,* 18 Ark.App. 87, 710 S.W.2d 842 (1986). It is undisputed in this case that, during the marriage, the parties spent at least $18,685 in marital funds to repair and improve the Arlington Road home and at least $4,634 in marital funds to repair and improve the Pineapple Drive home. Appellant contends that these expenditures and the contribution of marital funds to the properties' mortgage payments, of which he offered one canceled check from 2005 as his sole documentary proof, entitled him to an interest in the realty.

We see no clear error in the circuit court's property division. Appellee sold the Pineapple Drive home during the marriage and placed the $53,773 in sale proceeds into the parties' joint savings account. Appellee offered proof that appellant accessed the savings account frequently during the marriage and made a large number of cash withdrawals from it.

Although appellant testified that he spent the money on cash payments to the contractors who performed the repairs and improvements on appellee's homes, appellee testified that the parties did not pay the contractors in cash. This conflict in testimony was a matter for the circuit court to resolve. *See McNamara v. Bohn*, 69 Ark.App. 337, 13 S.W.3d 185 (2000). The evidence also showed that the parties used proceeds from the savings account to fund a jointly-owned investment account, which the court divided equally as marital property. The court may therefore have concluded that appellant had already benefitted from the sale of the Pineapple Drive home.

⌐7As for the Arlington Road home, which appellee still owned at the time of the divorce, appellant produced no proof that marital expenditures reduced the debt on the home or increased its value, though it was his burden to offer such proof. *See Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006). However, we have recognized that, even in the absence of such proof, a spouse is entitled to have the circuit court consider the contribution of marital funds when balancing the equities of property division. *See Powell v. Powell*, 82 Ark.App. 17, 110 S.W.3d 290 (2003). Nevertheless, in this case, we decline to disturb the circuit court's balancing of the equities. As mentioned previously, appellee demonstrated that appellant reaped considerable benefits from the sale proceeds of the Pineapple Drive home. Additionally, appellee testified that marital funds were used to pay some of appellant's separate expenses, such as property-owner-association dues on a lot that he owned and three years of child-support payments. Furthermore, the decree awarded appellant full ownership in an entity called Enterprise Products Partners, which was titled in both parties' names, and awarded appellant full ownership of an investment account that he created with pre-divorce income. Under these circumstances, we see no basis for reversal.

▪ Appellant also argues that the circuit court erred in equally dividing a Merrill Lynch investment account. Appellant owned the account prior to marriage. In 2006, the parties transferred $100,000 from their joint savings account to the Merrill Lynch account and changed the ownership of the Merrill Lynch account to themselves as joint tenants with ⌐8right of survivorship. At the time of the divorce hearing, the account had a value of approximately $145,000, and the court divided it equally as marital property. Appellant argues that the equal division was erroneous because the account was funded with a $260,000 settlement that he received for injuries sustained as a railroad worker. *See generally Skelton v. Skelton*, 339 Ark. 227, 5 S.W.3d 2 (1999) (holding that a personal-injury award is not marital property if it is for a degree of permanent disability or future medical expenses and is the result of an on-the-job injury or a tortious act). It is true that the *savings* account, from which the Merrill Lynch account was funded, contained appellant's railroad settlement. However, the savings account also contained contributions from appellee. During the marriage, both parties transferred approximately $100,000 from the jointly-held savings account into the jointly-held Merrill Lynch account. As we stated in *Singleton v. Singleton*, 99 Ark.App. 371, 375, 260 S.W.3d 756, 759 (2007):

> Appellant's argument focuses on the fact that the funds used to purchase the home, vehicles, and other property came from her personal-injury settlement. The trial court could have decided that, because the settlement money was deposited into joint accounts and was used to purchase, among other things, a

house titled in both names, it lost its character as appellant's separate property. *See McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000); *Lofton v. Lofton*, 23 Ark.App. 203, 745 S.W.2d 635 (1988). Placing the funds from her settlement into joint accounts created a presumption that appellant intended to make a gift to appellee of one-half of the settlement proceeds. Appellant offered no testimony seeking to rebut this presumption, and it was her burden to do so. *See Davis v. Davis*, 79 Ark.App. 178, 84 S.W.3d 447 (2002). Moreover, one spouse's unequal contributions to marital property need not be recognized upon divorce. *McKay, supra.*

The circuit court has broad powers to distribute both marital and non-marital property to achieve an equitable division. *Dial, supra.* Our property-division statute does not require mathematical precision in property distribution but only that property be distributed equitably. *Id.* Our review of the circuit court's division of property reveals no inequity. We therefore affirm the divorce decree. As stated previously, our affirmance renders appellee's cross-appeal moot.

Affirmed on direct appeal; cross-appeal moot.

GLADWIN and HENRY, JJ., agree.