2009 Ark. App. 860

**James W. POOLE, Jr., Appellant**

v.

**Anna Michelle POOLE, Appellee.**

**No. CA 09–42.**

Court of Appeals of Arkansas.

Dec. 16, 2009.

Boyd & Buie, DeWitt, by: Rufus T. Buie, III, and Mary Christina Boyd, for appellant.

Billy J. Hubbell, Crossett, for appellee.

JOHN B. ROBBINS, Judge.

Appellant James Poole appeals from the Ashley County Circuit Court's divorce decree. On June 16, 2008, the circuit court awarded a divorce to appellee Anna (Shelly) Poole, and gave her custody of the parties' daughters, B.P., born in 1992, and A.P., born in 1997. Appellant has a son, J.P., with Nicki Morgan, and has had custody of J.P. since he was a toddler. Appellant challenges the division of property, the award of attorney's fees to appellee, certain evidentiary rulings, and the custody award. We affirm the circuit court's decision in all respects.

The parties married in 1993 and separated in April 2005. Appellee filed for divorce in May 2005. With his answer, appellant counterclaimed for divorce. On June 17, 2005, appellant and Morgan were arrested and charged with possession of marijuana with intent to deliver and simultaneous possession of marijuana and firearms. The contraband was located at Morgan's residence.

The court held a temporary hearing on July 11, 2005, at which appellee testified that she did not want her children around Morgan. Appellant objected on the basis of hearsay. Appellee's attorney then produced a newspaper article about the arrests, to which appellant also objected on the basis of hearsay. The court admitted this evidence only to show the nature of the charges filed against appellant. Without objection, appellee testified that she wanted a restraining order because appellant had held a gun to her head more than once; that he had choked her; and that he had intimidated and threatened her in other ways. Appellant objected when appellee stated that she had found a note on the windshield of her van at Wal–Mart, where she worked. She stated, "There are security cameras at Wal–Mart and the person who put this on my van was filmed by the security cameras at Wal–Mart and I was given a description.... According to the description, Mr. Poole's nephew put it on my van." The court overruled appellant's hearsay objection to this statement. Appellee also said that appellant had used marijuana in their home within the past five years.

Appellant testified, "Nicki Morgan Robertson has been arrested and charged just like I have.... Since my arrest on Father's Day I have been required to submit to drug testing because of my work. I passed." He said that he would be willing to submit to a hair-follicle drug test. Appellant explained that he had nothing to do with the drugs involved in his arrest. He denied hitting, choking, or using a gun to threaten appellee, but admitted, "We just can't get along." In the temporary order, the court gave appellee temporary custody of the children and stated: "Nicki Morgan is not to be present in the home of

the defendant's parents, next door [where she was then living with appellant's sister], or in the vicinity of the visitation. She is not to be around the children or have contact with the children at any time." The court gave appellant standard visitation and directed him to have no contact with appellee.

Appellant's drug test was positive for methamphetamine. Appellee filed a petition for contempt and to abate or restrict visitation on the basis of the drug test; appellant's having told B.P. that smoking marijuana was "okay"; forcing B.P. to talk with him about the family's situation; and permitting Morgan to call him while the children were visiting (when one of the children answered the phone). The court abated appellant's visitation until the hearing on the petition.

At the next hearing, appellee testified that appellant had placed the children in an unsafe environment. Appellant objected on the basis of hearsay. Appellee said that appellant had continued to harass her by sending letters with child-support checks; driving by her mother's house frequently; and cursing her at the snow-cone stand. Appellee stated that appellant had verbally threatened her every time he saw her, as recently as the past Monday, and introduced notes that appellant had written to her into evidence. When appellee testified that appellant had told the children that it was okay to smoke marijuana, appellant objected on the ground of hearsay. Appellee explained that she had filed the petition because of the children's contact with Morgan; appellant's failed drug test; and appellant's harassment. She said that the children had been seeing counselors.

Appellant vaguely denied telling B.P. that it was okay to smoke marijuana. He explained, "I really didn't tell her it was okay to smoke marijuana. I just feel like it ain't really nothing really wrong with it. It's not as bad as people really say it is. Well, it says in the Bible all herbs and seed-bearing plants are good." Appellant denied using methamphetamine and said that the test must have been affected by his sinus medication. He also denied threatening appellee but admitted showing his diary to B.P. Without objecting to the question, appellant admitted having been arrested in June with Morgan and charged with possession of marijuana with intent to deliver and simultaneous possession of marijuana and firearms.

B.P. testified that she had told her mother that she did not want to visit her father because of the way he had treated appellee; that A.P. had answered the phone when Morgan called appellant; and that appellant had told her "that God put [marijuana] on this earth for a reason and that it says in the Bible that marijuana is a [sic] herb ... and that it's got to be used for something." She said that appellant had insisted on talking to her about her mother. She denied having smoked marijuana and said that appellant had not tried to give her any. From the bench, the trial judge told appellant that his sinus-medication explanation insulted his intelligence and gave appellant "one more chance" with visitation.

Appellee filed a petition for contempt on February 2, 2006, stating that appellant had continued to harass and threaten her, even calling Wal–Mart's main office to complain about her. She alleged that appellant had accused her of being the informant for his drug charges and had warned her "that she had better watch her back, that he would get her for this." She also alleged that he was behind in child support.

On March 24, 2006, appellee filed a motion to abate visitation, stating that appellant had smoked marijuana with B.P. on

more than one occasion. Appellant agreed to suspend visitation until a hearing was held. Appellant filed a motion to reinstate visitation on September 12, 2006, and a copy of a negative drug-test report for July 5, 2006. Appellant also passed a drug test in October 2006. The court held another hearing about visitation on November 7, 2006. Appellant testified that he and B.P. had passed drug tests soon after appellee had filed her petition to suspend visitation. The court admitted the drug-test reports into evidence. Appellant denied using marijuana, or even discussing it, with B.P. He admitted permitting her to have her navel pierced for her fourteenth birthday. He said that the jury had acquitted him of the drug charges.

Appellee testified that she had filed the petition to abate visitation because she had found a note from a friend to B.P. discussing B.P.'s doing drugs; that she had asked B.P. about it; and that she had performed a home drug test on B.P., which showed the presence of THC. Over appellant's hearsay objection, the trial court admitted this testimony to explain why appellee had filed the pleading. Appellee said that appellant had accused B.P. of lying; after the hearing, he had walked up to her and said, "I'll make you look like the biggest liar in Crossett." Appellee said that B.P. was intimidated and worried about how her father would treat her during visitation.

Stacey Stitch, B.P.'s therapist, testified that B.P. had told her that she had smoked marijuana and drunk alcohol with her father. She said that B.P. felt guilty about what she had done but also felt victimized, because her father and his family had called her a liar. Ms. Stitch recommended supervised visitation. Over appellant's hearsay objection, the court admitted this testimony because, as an expert, Ms. Stitch was entitled to base her opinion on what B.P. had told her. In rebuttal, appellant denied the substance of B.P.'s and Ms. Stitch's testimony but admitted telling B.P. that she had not told the truth.

Noting that B.P. had "some issues," the court granted appellant visitation with her once a week, in conjunction with Ms. Stitch's counseling, and gave him supervised visitation with A.P. After a hearing on February 27, 2007, the court granted appellant standard visitation.

The court held the final hearing on March 19, 2008. Appellee testified that she did not want to share custody of the children with appellant because she did not believe that he was capable of taking care of them. She said that, even when appellant had the children for visitation, she had to bring them food. She said that the children wanted to live with her and that she was worried the whole time they were with appellant. She stated that appellant owed her $7318 in child support. She said that, as a department manager in the photo lab, her net salary was $476 every two weeks; that the balance due on the house was about $45,000; that the deed to the land on which the parties built the house was in her name and was a gift from her grandmother; that the parties refinanced the house in December 2003, borrowing $56,000, and receiving $11,000 in cash; and that, when the parties separated, appellant had $7000 of that money in his checking account. The court admitted the November 2003 appraisal reflecting the property's value as $73,000 into evidence. Appellee said that she had paid the mortgage since the parties separated. She stated that it would be acceptable for appellant to receive his one-half equity in the house ($14,000) by receiving credit for the $7000 that he took upon their separation and the $7000 in child support he owed. Appellee said that she had paid $6590 in attorney's fees and owed her attorney $4265, plus the fees due from this hearing.

Appellant testified that the parties had built the house during the marriage and that he had made most of the payments while he was there. He said that he used the $7000 to pay marital debts. He asked for joint custody and denied not providing enough food for the girls. He admitted owing appellee child support. Appellant stated that he worked at Georgia–Pacific an average of forty hours a week, at $17 to $20 an hour. Appellant also had a retirement plan with his former employer that had a present value of $8,413.78, which would return about $204 a month at retirement age.

In the final order, the trial court awarded appellee a divorce and custody of the children; gave appellant standard visitation; and ordered appellant to pay child support of $150 a week, based on a weekly take-home pay of $555. The court awarded the house and the land on which it was built to appellee, stating,

> The parties built a home on that tract. There is no record regarding the cost of the construction. There is no evidence as to the value of the labor provided by Mr. Poole. There is no evidence of any increase in equity due to payments made during the marriage. The Court finds the home and 2 1/2 acres on which it stands to be the separate property of Ms. Poole. He obviously contributed some unknown amount to the value of the home. Therefore the Court accepts the offer of Ms. Poole to forgive any child support arrearages as payment for such contribution.

The court ordered the other two-and-a-half-acre tract sold and the proceeds divided equally, leaving appellee liable for any indebtedness on both tracts. The court awarded appellee one-half of appellant's retirement account, and held appellant responsible for the debts (which he had incurred after the separation). The court found that appellant had applied the $7000 to marital debts. It also distributed the various household items; a boat, motor, and trailer; tools; an ATV; a lawn mower; a guitar and amplifier; a dog pen; two computers; and two vehicles. Appellant filed a timely notice of appeal.

Appellant raises four points on appeal. He does not challenge the trial court's award of child support or the findings supporting it; the distribution of personal property; or the division of the other tract of land. In his first point, he argues that the trial court erred in its disposition of the marital home, which was built during the marriage on appellee's nonmarital land. Appellant correctly notes that a non-owning spouse is entitled to some benefit when marital funds have been used to improve or pay off debts on the other spouse's nonmarital property. *See Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993); *Williford v. Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983); *Camp v. Camp*, 18 Ark. App. 87, 710 S.W.2d 842 (1986). Appellant argues that appellee received a windfall; that the division was not equal; and that the trial court's explanation for its decision did not comply with Ark.Code Ann. § 9–12–315(a) (Repl.2008). Appellant urges this court to reverse, using the following computation: subtract the outstanding debt as of the date of the final hearing, $45,882.23, from the November 2003 appraised value of $73,000, leaving a net equity of $27,117.77, of which appellant would be entitled to one-half, $13,558.88; when his arrearages of $7318 are subtracted, there would be a balance of $6,240.88 due him.

Arkansas Code Annotated section 9–12–315 provides that "all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable." The court may make some other division that the court

deems equitable; however, when it decides not to divide the property equally between the parties, it must recite its basis and reasons for the unequal division in its order. Ark.Code Ann. § 9–12–315(a)(1)(B). With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm unless those findings are clearly erroneous. *Dial v. Dial*, 74 Ark. App. 30, 44 S.W.3d 768 (2001). The court has broad powers to distribute property in order to achieve an equitable distribution. *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001). The overriding purpose of Ark. Code Ann. § 9–12–315 is to enable the court to make a division of property that is fair and equitable under the specific circumstances. *Id.* Section 9–12–315 does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Copeland v. Copeland*, 84 Ark. App. 303, 139 S.W.3d 145 (2003).

A circuit court's valuation of property for purposes of property division will not be reversed unless it is clearly erroneous. *Hoover v. Hoover*, 70 Ark. App. 215, 16 S.W.3d 560 (2000). The burden of establishing the increase in the property's value lay with appellant. *See Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006). Here, the trial court attempted to give appellant his benefit in the property's increase in value, in the absence of much proof by appellant as to what that was. The appraisal indicated that appellee's land, which was nonmarital property, was worth $8000. Therefore, appellee argues that, if appellant's analogy is used, $8000 should be subtracted from the $73,000 appraisal, leaving the value of the home at $65,000; if $65,000 is reduced by $45,882.23, their equity would be $19,117.77, and one-half of that amount, $9,558.88, is only $2,240.88 more than the

arrearages for which the court gave appellant credit. She also stresses that appellant had $7000 in his checking account from the proceeds of the house's refinancing at the time of the parties' separation in April 2005. The court found that appellant used that money to pay marital debts.

Without evidence of the before-and-after value of the property to show the existence and extent of any increase in the value of nonmarital property, any reduction in debt on that property is not considered to be marital property to be divided equally. *Powell v. Powell*, 82 Ark. App. 17, 110 S.W.3d 290 (2003). Instead, the non-owning spouse is simply entitled to have the marital contribution considered in balancing the equities involved in the property division. *Id.* In *Rasberry v. Rasberry*, 2009 Ark. App. 594, 331 S.W.3d 231, we followed *Powell* and affirmed the trial court's refusal to award the appellant husband an interest in real property purchased by the wife before the marriage. We could not say that the trial court erred because the husband failed to present any evidence of the property's value at the time of the divorce or the amount of the reduction of debt. It is an appellant's burden to bring up a record sufficient to demonstrate error. *Rose Care, Inc. v. Ross*, 91 Ark. App. 187, 209 S.W.3d 393 (2005). Considering that there was no evidence of the increase in the value of the house, the trial court's finding on this issue was not clearly erroneous. Additionally, the trial court's overall distribution of the parties' property was equitable.

In his second point, appellant argues that the trial court abused its discretion in admitting hearsay evidence. Appellant argues that the trial court should not have admitted appellee's testimony that appellant and Morgan had been arrested for drugs. When his attorney objected, appellee's attorney asked to in-

troduce a newspaper article about the arrest. Over appellant's objection, the trial court entered the article into evidence and permitted appellee to testify, but only to show the crimes for which appellant had been charged. Arkansas Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declaring while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We will not reverse a circuit court's ruling on the admissibility of evidence absent a manifest abuse of discretion. *Hopkins v. Ark. Dep't of Human Servs.*, 79 Ark. App. 1, 83 S.W.3d 418 (2002). To have abused its discretion, the circuit court must not only have made an error in its decision, but also have acted "improvidently, thoughtlessly, or without due consideration." *Chapman v. Ford Motor Co., infra.* Even if the trial court erred in making an evidentiary ruling, we would affirm absent a showing of prejudice. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001).

Although this evidence was hearsay, *Chappell Chevrolet, Inc. v. Strickland*, 4 Ark. App. 108, 628 S.W.2d 25 (1982), its admission did not prejudice appellant. More than once, appellant admitted that he had been charged with the crimes described above. He also explained that he had been acquitted of those crimes.

 Appellant also argues that the trial court should not have permitted appellee to testify about the identity of the individual who placed a note on her van while she was at work at Wal–Mart, in violation of the no-contact order. She testified that Wal–Mart's security cameras filmed the person who placed it there; that someone viewed the video tape and gave her a description of the individual; and that, using this description, she identified appellant's nephew as that person. Appellant contends that the video tape constitut-

ed hearsay and that the information related to appellee about the tape was hearsay. *See Nahlen v. State*, 330 Ark. 1, 953 S.W.2d 877 (1997). Appellant is correct. However, this evidence was cumulative to appellee's extensive testimony about how appellant had continually harassed her; thus, appellant suffered no prejudice from its admission.

 Appellant also argues that appellee's testimony about statements made by B.P. to her, the contents of the friend's note, and the results of the at-home drug test, were inadmissible hearsay. Although the note was hearsay, the fact of its discovery was admissible, because it prompted appellee to investigate further and file the petition. A statement is not hearsay when it is offered to show the fact of some assertion or some action taken. *Chapman v. Ford Motor Co.*, 368 Ark. 328, 245 S.W.3d 123 (2006).

 Appellee testified at the temporary hearing, over appellant's objection, that appellant told B.P. that it was acceptable to smoke marijuana. Although this was hearsay, any harm from its admission was later cured when B.P. testified and was subject to cross-examination by appellant. The danger of admitting hearsay statements is alleviated by the opportunity to cross-examine the declarant. *Duvall v. State*, 41 Ark. App. 148, 852 S.W.2d 144 (1993).

 At the hearing for reinstatement of temporary visitation, the trial court permitted B.P.'s counselor to testify that B.P. had told her that she had smoked marijuana and drunk alcohol with appellant, over appellant's objection. This testimony was admissible to explain the basis for the counselor's diagnosis. *Meins v. Meins*, 93 Ark. App. 292, 218 S.W.3d 366 (2005).

Appellee testified that she had given B.P. a drug test at home, which had indicated the presence of marijuana, over appellant's objection. Appellee did not remember the brand name of the test; explain how it was conducted; or have the test results with her. Appellant argues that, because the drug sample was handled and tested in an unreliable manner, it could not have yielded a reliable result, and that appellee was not qualified as an expert on drug testing or analysis. Even if this testimony was inadmissible, it did not prejudice appellant, in light of the counselor's testimony.

In his third point, appellant argues that the trial court abused its discretion in awarding $6,000 in attorney's fees to appellee. Arkansas Code Annotated section 9–12–309(a)(2) (Repl.2008) provides that, in the final divorce decree, the trial court may award the wife or husband a reasonable attorney's fee. A trial court has considerable discretion to award attorney's fees in a divorce case. *McKay v. McKay,* 340 Ark. 171, 8 S.W.3d 525 (2000). In determining whether to award attorney's fees, the trial court must consider the relative financial abilities of the parties. *Id.*

Appellant testified that his take-home pay was between $17 and $20 an hour, forty hours a week. He does not challenge the trial court's finding that his net income was $555 a week. Appellee testified that she brought home $476 every two weeks, and that she had already paid her attorney $6950; that she still owed him $4265 for past services; and that she would also owe him his fees for the final hearing. Because appellant earns over twice as much as appellee, the trial court did not abuse its discretion in its award of attorney's fees to appellee.

In his fourth point, appellant argues that the trial court abused its discre-

tion in awarding custody of the children to appellee. He points out that, according to Arkansas Code Annotated section 9–13–101(b)(1)(A)(ii) (Repl.2008), the court may consider awarding joint custody of a child to the parents. Appellant admits that, in July 2005, he tested positive for methamphetamine by a hair-follicle drug test, but stresses that he explained to the court that he was taking sinus medication at that time. Appellant further notes that he never had another positive drug test, and that, even though he was tried before a jury for the drug charges, he was acquitted. The trial court did not believe appellant's sinus-medicine explanation. Even without the drug-related evidence, however, there was more than enough evidence to justify the trial court's custody decision.

The standard of review in child-custody appeals is well settled. The primary consideration in child-custody cases is the welfare and best interest of the child involved; all other considerations are secondary. *Walker v. Torres,* 83 Ark. App. 135, 118 S.W.3d 148 (2003). We review child-custody cases de novo, but will not reverse a circuit court's findings in this regard unless the findings are clearly erroneous. *Id.* Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler,* 99 Ark. App. 42, 256 S.W.3d 528 (2007). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as great a weight as those involving minor children. *Id.; Judkins v. Duvall,* 97 Ark. App. 260, 248 S.W.3d 492 (2007).

Although Arkansas Code Annotated section 9–13–101(b)(1)(A) was amended

in 2003 to specifically permit a court to consider an award of joint custody, joint or equally divided custody remains disfavored in Arkansas. *Dansby v. Dansby,* 87 Ark. App. 156, 189 S.W.3d 473 (2004). The crucial factor bearing on the propriety of joint custody is the mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare. *Id.* The record plainly demonstrates that these parties cannot cooperate well enough to share custody. *See id.*

Additionally, the evidence overall demonstrated that appellee was a better choice of custodial parent.

Affirmed.

KINARD and GRUBER, JJ., agree.