2010 Ark. App. 262

**Larry COATNEY, Appellant**

v.

**Natalie Karen COATNEY, Appellee.**

**No. CA 09–377.**

Court of Appeals of Arkansas.

March 17, 2010.

Cindy M. Baker, Berryville, AR, for appellant.

James E. Goldie, Harrison, AR, for appellee.

COURTNEY HUDSON HENRY, Judge.

This is an appeal from a decree entered by the Carroll County Circuit Court granting appellee Karen Coatney's counterclaim for divorce against appellant Larry Coatney. At issue is the trial court's division of property; Larry appeals, while Karen cross-appeals. We affirm in both regards.

Larry and Karen married in May of 1992 and separated on February 13, 2005. Prior to the marriage, Larry resided in a trailer on a sixty-acre tract of land owned by his mother, and he operated a cattle farm on the property. Karen owned three houses in Oklahoma that she acquired in a previous divorce. In 1994, Karen sold one of those houses, and the parties used the proceeds of that transaction to purchase a large mobile home and to construct a concrete pad for it on the sixty-acre tract.

The title to the mobile home listed both parties. Shortly thereafter, Larry's mother conveyed the tract to Larry as a gift. During the marriage, the parties made other improvements to the property as well. They constructed an airplane hangar and a landing strip; erected fences, cattle guards, and a corral; added a well house; built a 1,560 square-foot deck for the mobile home; improved an existing shop building; and had dozer work done and gravel laid.

In 2001, Larry exchanged with a neighbor a portion of the sixty-acre tract for a 1.44–acre parcel that adjoins the sixty-acre tract. The neighbor conveyed the 1.44–acre parcel to Larry and Karen as tenants by the entirety. In 2004, Larry's mother gave him the one-acre tract where she lived. Before Larry's mother die d, she transferred $14,500 to the parties, which they placed in a joint account at a credit union.

According to Larry, he obtained a $15,000 loan from his mother for the cattle operation in 1990, and he had seventeen cow/calf pairs at the time of the marriage. Throughout the marriage, Larry bought and sold cattle, and he satisfied the loan from his mother during the marriage. He placed the earnings of the business in a farm account and paid expenses for the operation out of this farm account. When the parties married, Larry added Karen's name to this account. While the divorce was pending, the trial court authorized the sale of the entire herd due to a drought, and the net proceeds of $27,859.61 were deposited into the registry of the court.[1]

In addition to the cattle operation, Larry worked for Tyson Foods, Inc., and his

---

1. At the time of separation, the prosecuting attorney charged Larry with third-degree battery, and Karen obtained an order of protection against him. The trial court allowed Karen to remain in the marital home, but due to the order of protection, the court limited the time Larry could spend on the farm to tend the cattle. Larry was subsequently acquitted of the battery charge.

latest available W–2 for 2002 reflected gross wages of $34,000 per year. He projected that his annual salary in 2008 would be $50,000. Larry testified that he deposited his paychecks into the farm account from which marital expenses were also paid. Larry also held stock and had a retirement account at Tyson that was valued at $82,000. Karen worked at Rock–Tenn Company until 2000, and she also bought and sold items on eBay. In 2002, she applied for and was later granted social security disability benefits for ruptured discs in her back. As a result, she received a lump-sum payment of $34,000 in past-due benefits and received $879 per month in disability income. Karen testified that she is not eligible for Medicaid and that her medical expenses exceed her income.

During the marriage, Larry built, bought, and sold airplanes. At the time of the divorce, he owned an RV6 that he assembled from a kit. Larry testified that this plane was worth $20,000, but he claimed that he could not sell it due to concerns about liability. He once owned a Kit Fox plane that he sold, and in February 2005, he sold a 1957 Cessna. Larry testified that he sold the Cessna for $15,000 and that he had retained the proceeds of the sale.

In the decree, the trial court divided the property as follows. The trial court found that the 1.44–acre tract titled in both parties' names was marital property but that the one-acre tract Larry's mother gave him was nonmarital property. The trial court also ruled that the homes Karen owned in Oklahoma were nonmarital property. The court found that the sixty-acre tract was a gift to Larry from his mother but that the property had lost its status as nonmarital property because of the substantial improvements made to the property with marital funds and Karen's non-

marital funds. The trial court rejected Karen's claim that Larry agreed to add her name to the title if she bought the new mobile home but found that it would be inequitable to award the property solely to Larry. The trial court ordered the property to be sold and the proceeds equally divided, finding that the evidence did not establish either the value of the property without the improvements or the value of the improvements. The trial court awarded the proceeds from the sale of the herd to Larry as his nonmarital property. The court also awarded Larry the RV6 airplane and the proceeds from the sale of the Cessna as his separate property. The trial court found that the $14,500 transfer of money from Larry's mother was a gift to Larry and thus nonmarital property. The court determined that Karen was entitled to one-half of the $12,000 Larry had in cash and that Karen would retain the items she purchased on eBay. The trial court also equally divided the parties' various retirement and savings accounts, as well as vehicles, tools, lawnmowers, and other items of personal property. Finally, the court ordered Larry to pay Karen alimony in the amount of $770 a month until he reaches the age of sixty-seven.

Both parties filed motions for reconsideration. The trial court addressed the motions in an amended decree that further set out the court's reasons underlying the division of property. With regard to the sixty acres, the court rejected Larry's contention that the mobile home was a gift to him from Karen, and the court found that the mobile home was not severable from the real property. The court ruled that the improvements made to the property substantially increased its value and that the increase in value was marital property under the "active appreciation" analysis enunciated by the supreme court, citing *Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008). The court also denied

Karen's request for the court to reconsider awarding Larry the airplanes and the proceeds of the cattle sale. The court stated that it took these matters into account when awarding Karen the interest in the sixty acres and in determining the amount of alimony she was to receive. The trial court granted Karen's request to award her $8,500 of the $19,000 Larry realized upon the sale of stock shortly after the separation. This appeal followed.

### Larry's appeal

Larry argues that the trial court erred in awarding Karen any interest in the sixty-acre tract. He contends that the property was a gift to him from his mother and thus excluded from the definition of marital property and that Karen failed in her burden of proving the value of her interest in the property. Larry also argues that the trial court erred by unequally dividing the marital property without explaining its reasons for doing so.

■ Under Arkansas Code Annotated section 9–12–315(a) (Repl.2009), all marital property shall be divided equally between the parties unless the trial court finds that such a distribution would be inequitable. In that event, the court is to make some other division that the court deems equitable, taking into consideration a number of factors: the length of the marriage; age, health, and station in life of the parties; occupation of the parties; amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preservation, and appreciation of marital property, including services as a homemaker; and the federal income tax consequences of the court's division of property. Ark.Code Ann. § 9–12–315(a)(1)(A). We have consistently interpreted section 9–12–315(a) as granting the trial court broad powers in distributing both nonmarital and marital property. *Farrell v. Farrell,* 365 Ark. 465, 231 S.W.3d 619 (2006). The overriding purpose of section 9–12–315 is to enable the court to make a division of property that is fair and equitable under the specific circumstances. *Keathley v. Keathley,* 76 Ark. App. 150, 61 S.W.3d 219 (2001). The statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Copeland v. Copeland,* 84 Ark. App. 303, 139 S.W.3d 145 (2003).

Section 9–12–315 excludes from the definition of marital property that which is "acquired prior to the marriage or by gift or by reasons of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement." Ark.Code Ann. § 9–12–315(b)(1). The definition of marital property also does not include the increase in value of property acquired prior to the marriage or by gift. Ark.Code Ann. § 9–12–315(b)(5). However, our case law has articulated an exception to this rule for the active appreciation of nonmarital assets. *Brown, supra.* This exception originated with the supreme court's decision in *Layman v. Layman,* 292 Ark. 539, 543, 731 S.W.2d 771, 774 (1987), where the court recognized that "when one spouse makes significant contributions of time, effort and skill which are directly attributable to the increase in value of nonmarital property ... the presumption arises that such increase belongs to the marital estate." The supreme court affirmed this rule under

the current version of the statute in *Farrell, supra,* wherein the court stated that "we follow an 'active appreciation' analysis in determining if one spouse's efforts significantly contributed to the increase in value of nonmarital assets." *Farrell,* 365 Ark. at 476, 231 S.W.3d at 627. In *Smith v. Smith,* 32 Ark. App. 175, 798 S.W.2d 442 (1990), we upheld the trial court's decision to award a non-owning spouse an interest in the increased value of a nonmarital asset where the non-owning spouse's efforts contributed to the asset's increased value.

■ In addition, we have long held that a non-owning spouse is entitled to some benefit when marital funds have been expended to improve or reduce the debt on the other spouse's nonmarital property. *Poole v. Poole,* 2009 Ark. App. 860, 372 S.W.3d 420 *See also Box v. Box,* 312 Ark. 550, 851 S.W.2d 437 (1993); *Williford v. Williford,* 280 Ark. 71, 655 S.W.2d 398 (1983); *Camp v. Camp,* 18 Ark. App. 87, 710 S.W.2d 842 (1986). Even in the absence of proof that marital expenditures reduced the debt or increased the value of nonmarital property, a non-owning spouse is entitled to have the trial court consider the contribution of marital funds when balancing the equities in the property division. *Ransom v. Ransom,* 2009 Ark. App. 273, 309 S.W.3d 204; *Powell v. Powell,* 82 Ark. App. 17, 110 S.W.3d 290 (2003). With respect to the division of property in a divorce case, the appellate court reviews the trial court's findings of fact and affirms them unless they are clearly erroneous. *Rasberry v. Rasberry,* 2009 Ark. App. 594, 331 S.W.3d 231. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Conlee v. Conlee,* 370 Ark. 89, 257 S.W.3d 543 (2007). We give due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.*

■ In the present case, the record reflects that Karen sold a nonmarital house for $65,000, and she used the money to purchase a $45,000 mobile home and to build a concrete pad for $13,500. The axle and wheels of the mobile home were removed, and it was anchored in eight places and was situated on three tiers of decorative blocks. Over the years, the parties made extensive improvements to the land, and the trial court could find that Karen's nonmarital funds and marital funds were expended to make these improvements. Consequently, the record supports the trial court's decision that Karen was entitled to an interest in the property. Given the substantial improvements made to the land with marital and Karen's nonmarital funds, the trial court reached an equitable decision by ordering the property to be sold. We are not able to say that the trial court's handling of this property is clearly erroneous.

Larry relies heavily on the decision in *Hale v. Hale,* 307 Ark. 546, 822 S.W.2d 836 (1992), in which the court stated that section 9–12–315 does not allow the equitable distribution of property that is acquired by either gift or inheritance during a marriage. In that case, however, there was no evidence that marital funds were expended to increase the value of the property or that the non-owning spouse made any contributions toward the increase in value of the nonmarital property. Thus, the decision in *Hale* is not apposite here. We point out that in *Brown, supra,* the supreme court applied the equitable active-appreciation rule to property inherited by a spouse during the marriage.

■ Larry also argues that the trial court made an unequal division of marital property without reciting its reasons for making the unequal distribution as re-

quired by section 9–12–315(a)(1)(B). In the amended decree, the trial court stated that, "to the extent the judgment rendered in this case is an unequal division of property," it considered the statutory factors and found that Karen prevailed in proving her need for more than a fifty-fifty share of the marital property. We consider this an adequate explanation. Moreover, Larry has not shown that the trial court's distribution actually resulted in an unequal division of marital property. The burden is on appellant to bring up a record sufficient to demonstrate that the trial court was in error. *Young v. Young*, 288 Ark. 33, 701 S.W.2d 369 (1986). Thus, Larry's argument also fails for want of a record. *Id.*

### Karen's cross-appeal

Karen first argues that the trial court erred in finding that the cattle business was Larry's separate property. She contends that she helped on the farm and placed her earnings in the joint farm account. She also points out that Larry satisfied the $15,000 loan for the business that he received from his mother during the marriage. On the other hand, Larry testified that Karen did not actively participate in this endeavor and that she did not contribute any money to pay the expenses of running the farm. Larry also testified that he placed appellant's name on the farm account as a matter of convenience.

■ The definition of marital property excludes property acquired in exchange for property acquired during the marriage and income derived from property owned prior to the marriage. Ark.Code Ann. § 9–12–315(b)(2) & (7). Here, the trial court resolved the conflicts in the testimony in Larry's favor. The court found that Karen's contributions of labor were minimal, that Karen's name was placed on the farm account for the purpose of paying bills, and

that she did not make significant contributions of her income into the farm account. The trial court also found that Larry should retain the proceeds as an offset for the court awarding Karen the interest in the sixty acres and for the payment of alimony. The trial court's decision is not clearly erroneous.

■ Karen's next argument is that the trial court erred by not awarding her an interest in the RV6 airplane and the proceeds from the sale of the Cessna. In making this award, the court found that Larry contributed his own labor and the costs associated with the planes. The court also found that, to offset any unfairness in this award, he allowed Karen to retain the items she purchased on eBay. Further, the court stated that it took this award to Larry into account when it set Karen's interest in the sixty acres. All things considered, we discern no manifest unfairness in the award and hold that the trial court's decision is not clearly erroneous.

■ Karen's last point on appeal is that the trial court erred by not awarding her a share of the $14,500 given by Larry's mother and placed in a joint account. With regard to these funds, Larry testified that his mother gave him the money to hold so that his mother would qualify for Medicare. In her testimony, Karen stated that she spent the money but that she did not feel that the funds were hers. In light of Karen's own testimony, we cannot say that the trial court's decision was clearly erroneous.

Affirmed.

HART and ROBBINS, JJ., agree.