

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–14–720

| | |
|---|---|
| MARIANNE ROBINSON | **Opinion Delivered** MARCH 4, 2015 |
| APPELLANT | APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT [NO. DR–11–305] |
| V. | |
| CHARLES LINDSEY | HONORABLE ADAM HARKEY, JUDGE |
| APPELLEE | |
| | AFFIRMED |

## DAVID M. GLOVER, Judge

This is a one-brief challenge to the trial court's division of property in the divorce action between appellant, Marianne Robinson, and appellee, Charles Lindsey. Marianne sought an unequal distribution of assets in the divorce, but the trial court rejected her attempt to justify an unequal distribution and divided the property at issue equally between the two parties. Our court dismissed an earlier appeal, finding that the decree was not final and appealable.[1] In an amended decree entered on July 30, 2014, the trial court included a Rule 54(b) certificate, and this appeal followed. For her sole point on appeal, Marianne contends that the trial court's property division was not equitable and should be reversed. We affirm.

---

[1]*Robinson v. Lindsey*, 2014 Ark. App. 287.



*Background*

The parties were married on March 11, 2002, and separated on or about October 13, 2011. There were no children born of the marriage. Pertinent findings from the June 30, 2014 amended divorce decree can be summarized as follows:

All accounts held in both parties' names at any time during the course of the marriage constituted marital property;

All accounts held in one party's individual name during the course of the marriage would be the separate property of the account holder;

Assets inherited by Marianne during the course of the marriage that had become joint property would be considered marital property;

The "Antioch House" and surrounding buildings were ruled marital property and ordered to be sold together or separately. Following the sale, Charles was to reimburse Marianne from his share of the proceeds for any mortgage payments or taxes that she made on the property and for which Charles did not pay half;

The "Lake House" was ruled marital property and ordered to be sold, with the proceeds divided equally between the parties;

The Branson Timeshare was ruled marital property and ordered to be sold or otherwise partitioned.

The trial court also disposed of designated personal property, setting out which property was to be sold, with the proceeds divided, and which property was the parties' individual property, to be retained by them individually.

*Standard of Review*

We review domestic-relations cases de novo on the record, but we will not reverse the circuit court's findings unless they are clearly erroneous. *Ransom v. Ransom*, 2009 Ark. App. 273, 309 S.W.3d 204. A circuit court's finding is clearly erroneous when, although

SLIP OPINION

there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Id.*

*Division of Property*

At the time a divorce decree is entered, all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable. Ark. Code Ann. § 9-12-315 (Repl. 2009). In that event, the court shall make some other division of property that the court deems equitable, stating in its order the basis and reasons for doing so, and taking into consideration the following factors: 1) the length of the marriage; 2) the age, health, and station in life of the parties; 3) the parties' occupations; 4) their amount and sources of income; 5) their vocational skills; 6) their employability; 7) the estate, liabilities, and needs of each party and the opportunity for each to acquire further capital assets and income; 8) the contribution of each party in the acquisition, preservation, or appreciation of marital property, including the services of a homemaker; and 9) the federal income-tax consequences of the court's division of property. *Id.*

"Marital property" means all property acquired by either spouse subsequent to the marriage, with certain designated statutory exceptions that include and are associated with property acquired prior to the marriage, or by gift, or by reason of the death of another, along with property that is excluded by a valid agreement of the parties. *See* Ark. Code Ann. § 9-12-315 (b) (1) – (7).



Where property is placed in the names of persons who are husband and wife, without specifying the manner in which they take, there is a presumption that they own the property as tenants by the entirety, and clear and convincing evidence is required to overcome that presumption. *Bradford v. Bradford*, 2013 Ark. App. 615. The rights of the parties under a tenancy by the entirety is a question of law. *Id*. The fact that consideration given for property taken in the two names belonged to only one spouse is of little, if any, significance where that spouse is responsible for the property being taken in both names, as the presumption is that there was a gift of an interest by the husband to the wife. *Id*. The tracing of money or property into different forms is not to be considered as an end in itself, and the fact that a spouse made contributions to certain property does not necessarily require recognizing those contributions in the property division upon divorce. *Id*.

*Discussion*

Marianne's argument is that Charles brought nothing into the marriage; he made little or no money during the marriage; living expenses were paid from her money; she had significant monetary interests prior to the marriage and inherited a great deal of money during the marriage; and even though certain accounts and real property were changed to reflect joint ownership, the overall circumstances should overcome the presumption that such property should be divided equally between them upon divorce. Although Charles did not file a responsive brief, it is fair to say that his overall position during the course of the litigation was that the property in question should be divided equally, which is what was done by the trial court in the decree.

SLIP OPINION

The primary properties at issue in this appeal are two jointly titled houses, which the parties identify as the "Antioch House" and the "Lake House," along with jointly titled financial accounts. The facts surrounding these properties are essentially undisputed. Marianne owned the Antioch House prior to the marriage. She used the Antioch House as collateral for a loan to purchase the Lake House, and she put Charles's name on the Antioch House deed so that he could also be on the mortgage for the Antioch House. Charles contributed $40,000 toward the $270,000 price on the Lake House, and Marianne paid the remaining $230,000. Both parties are the grantees on the deed for the Lake House.

With respect to the jointly titled financial accounts, Marianne testified that she and Charles had verbally agreed before their marriage that their properties would remain separate and that they would not commingle them. She explained that she did not add Charles's name to her financial accounts until 2006, and that she "had his name added because [she] was told [she] was going to die within five years." She further explained that Charles did not add her name to his financial account until after she had named him on hers. She basically traced the funds in her accounts to monies she had prior to the marriage or had acquired by inheritance from her mother.

Our de novo review of the record has not left us with a definite and firm conviction that the trial court erred in its division of property. The verbal agreement between the parties described by Marianne does not constitute a valid agreement under the law to exclude the properties at issue here from marital property, and Marianne does not truly make such a contention. Moreover, the facts surrounding the placement of both names on the deeds

5

for the Antioch House and the Lake House are more convincing that joint ownership was intended rather than providing clear and convincing evidence that it was not. Furthermore, Marianne herself testified that she put Charles's name on her accounts in anticipation of her own death. As explained in the *Bradford* case, *supra*, the tracing of money or property into different forms is not an end in itself, and titling the properties jointly was sufficient in itself to raise the presumption that a gift was thereby made to the other spouse. Again, Marianne's own testimony that it was done in anticipation of death supports, rather than dispels, that presumption.

Affirmed.

VIRDEN and GRUBER, JJ., agree.

*Schmidt Law Firm, PLC*, by: *Paul A. Schmidt*, for appellant.

No response.