John W. DEHAVEN and Michael Todd
d/b/a DeHaven Todd & Company and The Maumelle Company
*v.* T & D DEVELOPMENT, INC.

CA 94-597                                     901 S.W.2d 30

Court of Appeals of Arkansas
Division I
Opinion delivered July 5, 1995 ·
[Rehearing denied August 16, 1995.*]

*Hoofman & Pike, P.A.*, by: *George E. Pike, Jr.*, for appellants.

*Davidson Law Firm*, by: *Stephen L. Gershner*, for appellee.

JOHN B. ROBBINS, Judge. John W. DeHaven and Michael G. Todd, d/b/a DeHaven, Todd & Company, and the Maumelle Company have appealed from a foreclosure decree and judgment of the Pulaski County Chancery Court awarding T&D Development, Inc., $147,817.59 and foreclosure against the property securing the debt. We hold that this appeal is moot and dismiss.

In 1987, John and Marilyn Wright borrowed $176,000.00 from First Jacksonville Bank & Trust and secured the debt with a mortgage. In 1989, the Wrights gave a deed to the mortgaged property to the Maumelle Company, which signed an assumption agreement with First Jacksonville Bank & Trust. Appellant

---

*Pittman, J., not participating.

Todd was chairman of the board and appellant DeHaven was president and chief executive officer of the Maumelle Company. In 1991, appellants DeHaven and Todd, as partners of DeHaven, Todd & Company, signed an assumption agreement for the note and mortgage with First Jacksonville Bank & Trust. The note later went into default.

In September 1993, T&D Development was incorporated. John Wright, one of its incorporators, owned 50% of its shares, and his daughter owned the other 50%.

The next month, First Jacksonville Bank sold the note and mortgage to T&D Development for $110,000.00, which was less than the outstanding debt. On October 11, 1993, T&D Development filed a complaint for judgment on the debt and foreclosure against appellants. One of appellants' defenses was that T&D Development was a sham corporation and the alter ego of John and Marilyn Wright. Appellants also argued that T&D Development had paid, rather than purchased, the note and that it had done so on behalf of the Wrights. Therefore, appellants argued, appellee was entitled only to indemnity for the $110,000.00 actually paid to the bank rather than the full amount of the debt.

After trial, the chancellor found that T&D Development was not an alter ego of the Wrights and was organized in accordance with Arkansas law. He entered a decree of foreclosure and awarded judgment for appellee against appellants in the amount of $147,817.59.

Appellants state in their brief that appellee received $142,000.00 from the foreclosure sale and another $10,858.06 from garnishments against appellants. They argue that Mr. Wright therefore received $42,858.06 more than he paid to the bank and was entitled only to the amount of loss he sustained. Appellants also argue that T&D Development was simply Mr. Wright's alter ego and that it was incorporated for the sole purpose of bringing an action on the note and mortgage. They argue that, because payment by a maker of a note extinguishes the note, appellee only had a right of indemnity against appellants. For the reasons expressed below, we do not address the merits of this appeal.

Relying on *Shepherd* v. *State Auto Property and Casualty Insurance Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993), and *Lytle*

v. *Citizens Bank of Batesville*, 4 Ark. App. 294, 630 S.W.2d 546 (1982), appellee has filed a motion to dismiss this appeal contending that it is moot as a result of appellants' having already satisfied the judgment. We agree.

Appellants filed their notice of appeal on March 14, 1994. In an affidavit attached to the motion to dismiss, Mr. Wright states that a foreclosure sale was conducted on March 24, 1994; from the $142,000.00 proceeds, $141,667.08 was applied toward the judgment. He states that, on April 7, 1994, appellants' attorney delivered a certified check to appellee's attorney for $3,070.00 in partial satisfaction of the judgment; on April 13, 1994, the tenant on the foreclosed property paid $1,670.00 to satisfy the remaining amount owed appellee. Mr. Wright states that these payments satisfied the judgment in full.

Also attached to the motion to dismiss is a copy of a letter from appellee's attorney to appellants' attorney, stating:

> My client is prepared to go forward with executing the documents whereby Dehaven Todd & Co. and The Maumelle Co. will pay off the remainder of the Judgment in favor of T&D. George tells me, however, that Jay DeHaven will not agree to dismiss the appeal that he intends to continue pursuit of the appeal. We do no [sic] agree that the payments pursuant to this agreement are in lieu of an appeal bond. We merely acknowledge that the payments are being received for application against the judgement [sic] against Dehaven, Todd and The Maumelle Co. By accepting payments from you and your clients, T&D does not waive any arguments that we might choose to make in connection with the appeal.

In response, appellants strongly dispute appellee's characterization of their payment of the judgment as voluntary. They argue that this appeal is not moot because, even though they did not post a supersedeas bond, the money was "forcefully extracted" from them. They also argue that the cases relied upon by appellee in its motion to dismiss are distinguishable because appellants filed their notice of appeal before they paid appellee. Appellants argue that they were coerced into paying "$3,095.00 of the more than $152,858.06 owed on the date of the foreclosure sale...." They state: "The final payment thus coerced represents less than two

(2) percent of the Judgment, after ninety-eight (98) percent had been forcibly collected and another forceful attempt was pending." Appellants further argue that this case is distinguishable from the cases relied upon by appellee because, in those cases, the appellants voluntarily paid the judgments, with no executions or garnishments, before filing a notice of appeal.

In *Shepherd* v. *State Auto Property and Casualty Insurance Co.*, it appears that the cross-appellant did voluntarily pay the judgment before filing its notice of appeal. However, we cannot so distinguish *Lytle* v. *Citizens Bank of Batesville*, wherein we dismissed an appeal as moot because the appellant had satisfied a deficiency judgment he owed the bank. The bank contended that the appeal was moot due to the voluntary satisfaction of the judgment and the fact that the appellant had not posted a supersedeas bond. We agreed and stated:

> Some jurisdictions hold that the payment of a judgment under any circumstances bars the payer's right to appeal. However, in the majority of jurisdictions, the effect of the payment of a judgment upon the right of appeal by the payer is determined by whether the payment was voluntary or involuntary. In other words, if the payment was voluntary, then the case is moot, but if the payment was involuntary, the appeal is not precluded. The question which often arises under this rule is what constitutes an involuntary payment of a judgment. For instance, in some jurisdictions the courts have held that a payment is involuntary if it is made under threat of execution or garnishment. There are other jurisdictions, however, which adhere to the rule that a payment is involuntary only if it is made after the issuance of an execution or garnishment. Another variation of this majority rule is a requirement that if, as a matter of right, the payer could have posted a supersedeas bond, he must show that he was unable to post such a bond, or his payment of the judgment is deemed voluntary. For a discussion of the various rules, along with citations to the various jurisdictions, see: Defeated Party's Payment or Satisfaction of, or Other Compliance With, Civil Judgment as Barring His Right to Appeal, Annot. 39 A.L.R.2d 153 (1955); 4 Am. Jur. 2d *Appeal and Error*, § 260 at 755 (1962); *Metropolitan Development and Housing Agency* v.

*Hill*, 518 S.W.2d 754 (Tenn. App. 1974).

We adopt the majority rule as the better reasoned rule. Thus, if appellant's payment was voluntary, then the case is moot, but if the payment was involuntary, this appeal is not precluded. In applying this rule to the facts at bar, we must determine whether the payment made by appellant was voluntary or involuntary. In doing so, we believe that one of the most important factors to be considered is whether appellant was able to post a supersedeas bond at the time he satisfied the judgment. The record supports the conclusion that he could have done so.

There is nothing in the record which shows appellant even requested the court to set the amount of a supersedeas bond, much less to show his financial inability to pay such cost. Obviously, appellant had the financial ability and resources to borrow $13,364 so he could satisfy the judgment in full. There is no evidence to indicate the posting of a supersedeas bond would have been a greater or lesser financial burden on appellant than his full payment of the obligation imposed under the judgment. For whatever reasons, appellant simply chose to forego his right to request a bond in an effort to stay the trial court's judgment and any subsequent proceedings to enforce it.

In view of the state of the record before us, we find appellant's payment was voluntary. Therefore, we hold this appeal should be dismissed because appellant's satisfaction of the trial court's judgment rendered the issues on appeal moot.

4 Ark. App. at 296-98.

Appellants argue that *Lytle* does not apply to this case because, in that case, the payment was made before the notice of appeal was filed. Appellants argue that, unlike the *Lytle* case, they filed their notice of appeal before making a voluntary payment. We cannot, however, distinguish *Lytle*. Our review of the record in the *Lytle* case shows that the appellant in that action filed his notice of appeal on March 2, 1981. On March 18, 1981, a judicial sale of land was held to satisfy the judgment. On March 31, 1981, an order confirming the sale and awarding a deficiency

judgment was entered. On May 7, 1981, a partial satisfaction of the judgment was filed, which recited that the deficiency judgment had been paid in full.

It is therefore clear that, in the *Lytle* case, the appellant made a payment toward satisfaction of the judgment after filing the notice of appeal, just as appellants did in the case before us. The *Lytle* case, therefore, is not distinguishable and applies here.

■ Additionally, here, as in *Lytle*, there is nothing in the record to show that appellants requested the court to set the amount of a supersedeas bond or appellants' financial inability to pay for such a bond. As in *Lytle*, therefore, we hold that this appeal must be dismissed because appellants' satisfaction of the trial court's judgment rendered the issues on appeal moot.

Dismissed.

COOPER and MAYFIELD, JJ., agree.