J.W. HENDRIX *v.* Pat Cooper WINTER,
Trustee, aka Pat Winter

CA 99-794                                      16 S.W.3d 272

Court of Appeals of Arkansas
Opinion delivered May 10, 2000

*Mitch Cash*, for appellant.

*The Blagg Law Firm*, by: *Ralph J. Blagg* and *Brad A. Cazort*, for appellee.

PER CURIAM. This per curiam order relates to an appeal from the chancellor's award of attorney's fees and costs to

the appellee, Pat Cooper Winter, who prevailed in an action by J.W. Hendrix, appellant, to establish an easement on Winter's land by prescription. The appeal was submitted to a panel of this court on March 15, 2000. However, before an opinion could be rendered, Winter, on March 20, 2000, filed a motion to dismiss the appeal, asserting that Hendrix had voluntarily paid the judgment on March 2, 2000. Hendrix filed a response to the motion admitting that the judgment had been satisfied, but alleging that his attorney had entered into an agreement with Winter's attorney to the effect that Winter's attorney would "hold" the funds paid by him in satisfaction of the judgment pending the outcome of the appeal, and that, upon conclusion of the appeal, the funds would be released to the party who prevailed. Hendrix also alleged that the reason for this agreement was that the existence of the judgment on the record had created financial difficulties for him in conducting his timber business because of his inability to obtain a bank loan as a result of the judgment lien on his land.

Hendrix attached to his response the affidavits of himself and his attorney that set forth in greater detail the circumstances and events that led to the alleged agreement. Attached to his attorney's affidavit was a copy of a portion of the attorney's February 29, 2000, long-distance telephone bill purporting to reflect two calls from Hendrix's attorney to Winter's attorney on February 25, four minutes and seven minutes in duration, respectively. Hendrix's attorney alleged in his affidavit that these telephone conversations resulted in the agreement between the parties' attorneys that Hendrix would pay the judgment funds to Winter's attorney, that a satisfaction of the judgment would be entered of record, but that Winter's attorney would hold the funds pending conclusion of the appeal.

Winter filed a reply to Hendrix's response disputing Hendrix's allegation that the payment of the judgment involved an agreement to hold the funds pending the outcome of the appeal. Winter's reply was accompanied by an affidavit of her attorney stating that a Satisfaction of Judgment was provided to Hendrix in exchange for payment of the judgment, that the exchange was accomplished without a conversation resulting in any agreement that the funds were to be held pending the resolution of the appeal, and that payment of the judgment was voluntarily made by Hendrix at his request.

■ Obviously, the positions of the respective parties as to the existence of an alleged agreement to "hold" the judgment funds pending the appeal are diametrically opposed, and we believe that we have good reason to be concerned about what appears to be a violation by the attorney for one of the parties of Rule 3.3(a)(1) of the Model Rules of Professional Conduct, which provides that, "a lawyer shall not knowingly make a false statement of material fact or law to a tribunal." This court is without the means or authority to resolve the disputed factual issue of whether either, or which, attorney has committed an ethical violation. However, under Canon 3(D)(2) of the Arkansas Code of Judicial Conduct, we, as judges, having received information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty or trustworthiness, are obligated to either communicate directly with respect to the violation with the lawyer who has committed the violation or report the violation to the Arkansas Supreme Court Committee on Professional Responsibility. Under the circumstances presented here, we consider that it is appropriate to report this matter to the Committee on Professional Responsibility, and we do so at this time by directing the Clerk of this court to provide a copy of this order to its Director, James A. Neal.

■ Turning to the merits of the matter, we have decided that the motion to dismiss this appeal must be granted. In *DeHaven v. T & D Dev., Inc.*, 50 Ark. App. 193, 901 S.W.2d 30 (1995), we held that if an appellant voluntarily pays a judgment, then the appeal from that judgment would be moot, but that if payment of the judgment is involuntary, an appeal would not be precluded. In Hendrix's response to Winter's motion in the case at bar, he does not contend that his payment of the judgment was involuntary. He alleges that the existence of the judgment on the record, constituting a lien on his land, created a financial hardship on his timber business due to his inability to obtain a bank loan. Consequently, he chose to pay the judgment debt in exchange for a satisfaction of it. In *DeHaven*, we quoted from *Lytle v. Citizens Bank of Batesville*, 4 Ark. App. 294, 630 S.W.2d 546 (1982):

> [I]n the majority of jurisdictions, the effect of the payment of a judgment upon the right of appeal by the payer is determined by whether the payment was voluntary or involuntary. In other words, if the payment was voluntary, then the case is moot, but if the

> payment was involuntary, then the appeal is not precluded. The question which often arises under this rule is what constitutes an involuntary payment of a judgment. For instance, in some jurisdictions the courts have held that a payment is involuntary if it is made under threat of execution or garnishment. There are other jurisdictions, however, which adhere to the rule that a payment is involuntary only if it is made after the issuance of an execution or garnishment. Another variation of this majority rule is a requirement that if, as a matter of right, the payer could have posted a supersedeas bond, he must show that he was unable to post such a bond, or his payment of the judgment is deemed voluntary....

*DeHaven*, 50 Ark. App. At 193, 901 S.W.2d at 32.

Hendrix does not allege that an execution or garnishment on the judgment against him had been either threatened or issued at the time he paid the judgment. He had an absolute right to post a supersedeas bond in this court that would have stayed enforcement of the judgment pending his prosecution of the appeal. He did not do so, and he does not allege that he was unable to post such a bond. From the fact that Hendrix had the money to pay the judgment in full, it is obvious to us that he could have obtained the approval by this court of a supersedeas bond by filing the appropriate bond with the clerk of this court, accompanied by a certificate of deposit, certified check, cash, bank money order, corporate surety, or irrevocable letter of credit, in an amount sufficient to guarantee his payment of "all costs and damages that shall be affirmed against appellant on appeal; or if appellant fails to prosecute the appeal to a final conclusion, or if such appeal shall for any cause be dismissed, that appellant shall satisfy and perform the judgment, decree or order of the trial court." Ark. R. App. P. 8(a); *see also Home Mut. Fire Ins. Co. v. Jones*, 62 Ark. App. 182, 969 S.W.2d 675 (1998); and *Schramm v. Piazza*, 53 Ark. App. 99, 918 S.W.2d 733 (1996).

We do not decide by this opinion whether, in a proper case, we would not approve and enforce a written stipulation between the parties for the stay of enforcement of a judgment pending an appeal. However, under the rule applied in *DeHaven*, *supra*, we obviously cannot permit the prosecution of an appeal from a judgment that has been satisfied solely upon the strength of an alleged unwritten agreement that is disavowed by one of the parties to the appeal.

Appeal dismissed.

HART and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I strongly disa-
gree that this appeal should be dismissed. This appeal,
from an award of a $6009 attorney fee to appellee in a prescriptive
easement case, was submitted to a panel of this court on March 15,
2000. On March 20, 2000, the appellee filed a motion to dismiss
the appeal, in which he asserted that the appellant had voluntarily
paid the judgment on March 2, 2000. The appellant filed a response
to the motion, denying that he had paid the judgment, asserting
that he sought only removal of the recorded judgment lien in order
to secure financing necessary to operate his business and that, in this
regard, appellee's attorney had agreed to 1) hold the judgment funds
pending the outcome of the appeal, 2) satisfy the judgment lien on
the record, and 3) release the funds later to the party who ultimately
prevailed in the appeal. This response was accompanied by a
detailed affidavit, signed by appellant's attorney, outlining the
alleged agreement, the telephone conversations with appellee's
attorney, and had telephone logs attached. The affidavit states in
pertinent part:

> Mr. Blagg stated that he would hold the funds until a decision
> was made and keep the money if the trial court was affirmed *or
> return the money if the trial court was overturned.* (Emphasis added.)

The appellee's attorney then filed a reply to the appellant's
response, to which he appended his sworn affidavit, which states in
its entirety:

> I am Ralph J. Blagg and I am the Attorney for the Appellee,
> Pat Winter. I was approached by the Appellant's Attorney and was
> asked to provide a Satisfaction of Judgment in exchange for pay-
> ment of the judgment amount. This was done. *There were no
> agreements or conversations about holding the funds pending resolution of
> the appeal.* Payment of the judgment was voluntarily made by the
> Appellant at the Appellant's request. (Emphasis added.)

I do not agree that this appeal should be dismissed because the
determination of whether the judgment has been voluntarily paid
by the appellant necessarily hinges on which lawyer is telling the
truth in the contradictory affidavits that have been filed with this

court. These two sworn statements clearly cannot be reconciled, and I do not agree that the appeal must be dismissed no matter which lawyer is telling the truth. The propriety of appellee's attorney agreeing to such an arrangement or the wisdom of appellant's attorney making such an agreement without reducing it to writing are not pertinent to. the analysis of the issue before us, that is whether the judgment has been voluntarily *paid*. In this regard, the facts as outlined in appellant's affidavit describe what is in essence an agreement by counsel to escrow the judgment funds pending the outcome of this appeal. Although our appellate courts have held that voluntary payment of a judgment will negate an appellant's ability to appeal the judgment, *see Shepherd v. State Farm Auto Property & Cas. Ins. Co.,*312 Ark. 502, 850 S.W.2d 324 (1993), *Lytle v. Citizens Bank of Batesville,* 4 Ark. App. 294, 630 S.W.2d 546 (1982), the escrow-type arrangement described by appellant does not constitute payment of the judgment, voluntary or otherwise. The ministerial act of satisfying the record likewise does not equate to payment of this judgment.

For these reasons, I would defer any decision on the appellee's motion to dismiss this appeal until we, or some other appropriate forum, can address the inconsistent statements of the two attorneys as set out in their. sworn affidavits.

HART, J., joins.