Cite as 2020 Ark. App. 124

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-18-401

| | |
|---|---|
| SHIRLEY LYLE HITT | Opinion Delivered: February 19, 2020 |
| APPELLANT/CROSS-APPELLEE | APPEAL FROM THE JACKSON COUNTY CIRCUIT COURT |
| V. | [NO. 34CV-07-77] |
| JAMES WALLER LYLE, INDIVIDUALLY; ANN LYLE, INDIVIDUALLY; KATHERINE LYLE HARBISON, INDIVIDUALLY; AND D/B/A LYLE FARMS PARTNERSHIP | HONORABLE PHILIP SMITH, JUDGE |
| | AFFIRMED IN PART ON DIRECT APPEAL; REVERSED AND REMANDED WITH INSTRUCTIONS IN PART ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |
| APPELLEES/CROSS-APPELLANTS | |

## MEREDITH B. SWITZER, Judge

This is an appeal from protracted litigation concerning the dissolution of a family farming partnership—Lyle Farms Partnership.

Lyle Farms Partnership was formed by Ann Lyle, Katherine Lyle Harbison, James Waller Lyle, and Shirley Lyle Hitt. In this lawsuit, Shirley sued her mother, Ann; her sister, Katherine; her brother, James; and the Lyle Farms Partnership seeking to dissolve the partnership. It is primarily the siblings who have conflicted. As a general premise, Katherine and James clashed with Shirley over what they consider her lack of involvement in the farming operations, whereas Shirley accused James and Katherine of excluding her from the partnership operations and misappropriating partnership funds.

This litigation began over a decade ago when Shirley filed her initial complaint in 2007. Since then, the case has been plagued by difficulties and irregularities. Both Ann and

James died during the pendency of the litigation. The circuit court held a bench trial on the merits of this case in 2011 and 2012 but did not rule until 2017. Once the circuit court fully and finally ruled on the matter, both an appeal and a cross-appeal were filed. Both are now ripe for our court to decide.

I. *Background*

J.P. Lyle began farming in Jackson County, Arkansas, in the 1920s. He married Ann in 1955, and they had three children—Katherine, Shirley, and James.

Each member of the Lyle family worked on the farm, and for many years, they all lived in the family home. Additionally, no family member collected a salary for work on the farm. Instead, until 2005, they shared one bank account, which each family member used for both farming and personal purchases. Beginning in 1986, it was Katherine's responsibility to keep track of the family's financial records.

In 1990, J.P. died. Ann, Shirley, Katherine, and James continued to operate the farm. In 2003, they executed a partnership agreement under the name Lyle Farms. The partnership agreement was backdated to 1986. The agreement reflected that each individual was an equal partner with authorization to transact business for the partnership. However, the consent of all partners was required for the partnership to "borrow or lend money or make, deliver or accept any extraordinary commercial paper or execute a mortgage, security agreement, or a bond, or lease, or contract to purchase, or contract to sell any property of the partnership." The partnership agreement also provided that it would terminate in the event any partner gave one year advance notice of said termination.

Problems arose around 2005. James and Katherine contend that Shirley's level of involvement with the farming operations had dramatically declined. Shirley claims James and Katherine excluded her from management and operations of the partnership and used partnership assets for their personal benefit.

On June 30, 2006, Shirley gave written notice of her intent to dissolve the partnership pursuant to the terms of the partnership agreement. Nearly one year later, on May 9, 2007, she filed a lawsuit against Ann, James, Katherine, and Lyle Farms seeking to dissolve the partnership, to liquidate its assets, and an accounting.[1] James and Katherine would later file a counterclaim against Shirley seeking damages for breach of contract, breach of fiduciary duty, conversion, and misappropriation.

Shirley filed several amendments to her original complaint. The third amended complaint filed in December 2010 is the operative complaint in this case.[2] In it, Shirley sought substantially the same relief as she had initially, including a declaration from the court that two parcels of land were actually partnership property. She asserted that one parcel, a 273-acre property known as Sink Farm that was deeded solely to James in 1986 was partnership property pursuant to Arkansas Code Annotated section 4-46-204(c) (Repl. 2011) because partnership funds were used to purchase it. Shirley also claimed that a second parcel consisting of fifteen acres of land deeded solely to Katherine was partnership property. The fifteen acres was deeded to Katherine by all of the partners, but Shirley claims the land

[1]This dispute is primarily between James, Katherine, and Shirley. Because of this, we will often refer to the appellees/cross-appellants as James and Katherine.

[2]By the time the third-amended complaint was filed, Ann had died, and the Estate of Ann Lyle was substituted for Ann.

3

was deeded to Katherine with the understanding that each partner also would receive a deed for land as his or her separate property, which never occurred. Additionally, Shirley claimed that a mobile home that sat on the fifteen acres was partnership property rather than Katherine's sole property.

Shirley's complaint also alleged that James and Katherine borrowed against partnership assets without the agreement and consent of all parties, which was required by the partnership agreement. Specifically, James and Katherine obtained a loan from Iberia Bank and used crops that were partnership assets as collateral for the loan.

Iberia Bank sought to intervene in this matter in order to collect from James and Katherine. It claimed it had a first-priority lien on the partnership crops pledged as collateral for its loan and sought an order of delivery. Shirley objected since she had not been a party to the loan or agreed to using the partnership crops as collateral for it. Despite her objections, the circuit court issued an order of delivery in August 2010 requiring that all proceeds from the sale of the crops be paid to Iberia Bank.

Mere days after the order of delivery in favor of Iberia Bank was entered, Shirley filed a new lawsuit ("the 2010 lawsuit"), which was a complaint in foreclosure on landlord's crop lien. In that complaint, Shirley sought injunctive relief based on the same facts of this litigation. The 2010 lawsuit was assigned to a different judge in the same judicial district. Pursuant to Arkansas Rule of Civil Procedure 11, James and Katherine filed a motion for sanctions in the 2010 lawsuit accusing Shirley of forum shopping. James and Katherine also sought to have Shirley held in contempt for her conduct. Ultimately, Shirley's request to

4

proceed on the injunction claim was denied, and the 2010 lawsuit was transferred and consolidated with this case.

Because the financial status of the partnership was a significant issue in this litigation, the circuit court ordered an accounting and appointed Jones & Co., Ltd., to perform it. Jones & Co. prepared an accounting report at the circuit court's direction. It undertook to account for all expenditures—including personal expenditures paid from farm accounts and farm income deposited into personal accounts. In the report, several obstacles were highlighted:  there was not a complete set of books or financial statements and general ledgers for any Lyle Farms operations; most of the farm income was not deposited into bank accounts; and many times, information was incomplete. It found that personal expenditures were not kept separate from farm expenditures and that there were no accounting records for any of the Lyle Farms operations.

Eventually—more than four years after the initial complaint had been filed—the circuit court held a bench trial over the course of several days in 2011 and 2012. The circuit court took the matter under advisement at the conclusion of the trial. Five years later, the circuit court entered an order deciding the merits of the case.[3]

In November 2014, while the circuit court had the case under advisement, Southland Oil sought to intervene, seeking to receive delinquent payments for petroleum orders it delivered to the partnership. In December 2014, the circuit court allowed Southland Oil to intervene in this matter and directed that its claim be paid from partnership funds.

---

[3]James died while the circuit court had the case under advisement.

The circuit court finally entered an order on the merits on March 21, 2017. The circuit court amended its order on April 12 and then again on April 13, 2017.

The April 13 order dissolved the partnership and provided that the land owned by the partnership be partitioned equally and sold. It also addressed several other issues pertinent to this appeal. Specifically, the circuit court found that Sink Farm was James's sole property, that another fifteen acres was Katherine's sole property, and that any attack against these properties was barred by the statute of limitations and laches. The circuit court also found that the parties had a long-established routine of lax accounting practices, with each of the siblings paying much of their living expenses from the partnership bank accounts, and that this practice made any exact accounting or proof of damages virtually impossible to accurately determine. The circuit court further found that the Iberia Bank debt incurred by James and Katherine was incurred to maintain and continue the partnership and that it was partnership debt despite the fact that Shirley did not agree to be bound. The circuit court also determined that Shirley was entitled to one-fourth of the farm assets. Finally, the circuit court ruled that any motions for contempt or sanctions were denied.

Shirley filed a motion for reconsideration and new trial, which the circuit court denied. James and Katherine filed three motions for attorney's fees, which the circuit court also denied.

Shirley appealed. However, Shirley would later dismiss the appeal without prejudice due to unresolved claims in intervention. Thereafter, the claims in intervention were dismissed with prejudice by the circuit court on March 6, 2018, and Shirley timely appealed on April 3, 2018, abandoning any pending but unresolved claims in her notice of appeal.

That same day, James and Katherine filed a timely notice of cross-appeal in which they also abandoned any pending but unresolved claims.

## II. *The Direct Appeal*

On direct appeal, Shirley raises three arguments in support of reversal. First, she argues that Sink Farm is partnership property, and the circuit court erred by finding that it was James's separate property. Shirley further argues that the circuit court erred by ordering payments for James's and Katherine's personal debts—specifically the debts to Iberia Bank and Southland Oil—to be paid from partnership assets. Finally, she contends that the fifteen acres of land deeded to Katherine and the mobile home on it belong to the partnership and that the circuit court erred by awarding it to Katherine as her sole property.

## A. Sink Farm

In awarding the 273-acre Sink Farm to James as his separate property, the circuit court found:

> The 273 acres titled in James Waller Lyle was purchased in 1986. There exists no written documentation of any agreement that this was to be partnership property, and the deed contains no limitation on James Waller Lyle's fee simple ownership of the land. Additionally, any other theory of attack on his title by [Shirley] is barred by the statute of limitation and laches. This acreage therefore is found to be owned by James Waller Lyle.

Shirley seeks reversal of this ruling and makes a twofold argument in support. She challenges the circuit court's ruling that the statute of limitations and laches bar her claim. She also disputes the ruling that the property belongs solely to James.

First, we address whether the statute of limitations or laches bars Shirley's claim. In her complaint, Shirley sought legal relief in the form of a declaration and disposition of Sink Farm as partnership property pursuant to Arkansas Code Annotated section 4-46-204(c).

7

Laches is available only when equitable relief is sought. *See Warford v. Union Bank of Benton*, 2010 Ark. App. 635, 378 S.W.3d 239. Accordingly, the circuit court erred in holding that Shirley's claim was barred by laches.

With regard to the statute of limitations, the statute of limitations does not begin to run in any case until there is a complete and present cause of action. *Holloway v. Morris*, 182 Ark. 1096, 34 S.W.2d 750 (1931). Here, the complete and present cause of action did not arise until James asserted sole ownership in Sink Farm, which was in 2007. The statute of limitations began to run at that time, and Shirley filed her lawsuit that same year. Accordingly, we hold that the statute of limitations does not bar Shirley's claim, and it was error for the circuit court to conclude otherwise. Despite this, the circuit court gave an alternate reason for its decision to award Sink Farm to James—that the evidence supported a finding that it was James's sole property. Thus, we direct our analysis to whether the evidence supported this finding.

Payments on Sink Farm were made from the partnership account. Arkansas Code Annotated section 4-46-204(c) (Repl. 2011) provides that property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership. Sink Farm is therefore presumed to be partnership property. Whether that presumption was rebutted is a factual question that we evaluate for whether it was clearly erroneous.[4] *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002). A finding is clearly

---

[4]Shirley urges our court to undertake a de novo review on this issue because she argues the circuit court erred as a matter of law by failing to recognize and apply the statutory presumption that the property was owned by the partnership. *See Travelers Cas. & Sur. Co. of Am. v. Cummins Mid-S., LLC*, 2015 Ark. App. 229, 460 S.W.3d 308. We decline to do so. Here, the circuit court concluded that Sink Farm was not partnership property, but it is

erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

Shirley contends that James failed to rebut the presumption that Sink Farm was partnership property. Regarding the purchase of Sink Farm, Shirley produced a hand-written document, purportedly written by Katherine, which showed the amounts each person contributed to the purchase of Sink Farm. Shirley testified that she and her siblings operated as if it were partnership property for over twenty years. She offered evidence that Sink Farm was used as collateral for partnership loans and that the partnership made loan and tax payments on Sink Farm. Shirley also produced Farm Service Agency records that reflect that each partner contributed 25 percent of the land, capital, equipment, labor, and management for Sink Farm and that no member of the partnership rented or leased land or equipment to the partnership. Finally, Shirley testified that she received a landlord's share on the proceeds from Sink Farm in 2005 and 2006.

To rebut the presumption, James emphasizes that the property was deeded solely to him. He testified that he purchased Sink Farm by himself and not as part of the partnership despite the fact that payments for the farm were made with funds from the family bank account. He asserts the family bank account was used because until 2005, it was the family's only bank account, and everyone used the partnership account for personal expenses. James also explained that the partnership account was used to make payments on the loan because

---

not clear that the circuit court failed to apply the statutory presumption in so holding. Our court presumes that a circuit court made the findings necessary to support its judgment. *McCracken v. McCracken*, 2009 Ark. App. 758, 358 S.W.3d 474. Accordingly, we limit our review to whether the circuit court's finding was clearly erroneous.

9

he had leased the land to the partnership for farming and accepted payment on the loan in lieu of rent.

We are left with a definite and firm conviction that the evidence James submits does not sufficiently rebut the presumption that Sink Farm was partnership property. The evidence in support of the presumption is overwhelming. We therefore hold that the circuit court clearly erred in awarding Sink Farm to James as his separate property. We reverse and remand this issue to the circuit court for entry of an order finding that Sink Farm is partnership property and directing that it be disposed of accordingly.

## B. Shirley's Debt Obligation

Next, Shirley contends that the circuit court erroneously shouldered her with 25 percent of nearly $500,000 in debt to Iberia Bank and Southland Oil. These debts were incurred by James and Katherine after Shirley had given notice of her dissolution. Despite this, the circuit court ordered that the Iberia Bank and Southland Oil debts be paid with partnership assets.

As a general premise, once a partner is disassociated, he or she is not liable for a partnership obligation incurred after disassociation. Ark. Code Ann. § 4–46–703(a). There are limited exceptions to this general rule that allow a partnership to continue in a limited capacity after dissolution. Arkansas Code Annotated section 4–46–802(a) provides that a partnership may continue for the purpose of winding up its business, and a partnership is bound by a partner's act after dissolution that is appropriate for winding up the partnership business. Ark. Code Ann. § 4–46–804(1).

Winding up a business is the process of settling the partnership's affairs. *See Drummond v. Batson*, 162 Ark. 407, 258 S.W. 616 (1924). When winding up a partnership's business, a person may preserve the partnership business or property as a going concern for a reasonable time, prosecute and defend actions and proceedings, settle and close the partnership's business, dispose of and transfer the partnership's property, discharge the partnership's liabilities, distribute the assets of the partnership, settle disputes by mediation or arbitration, and perform other necessary acts. Ark. Code Ann. § 4-46-803(c).

The question before us then is whether Shirley is liable for these debts under an exception to the general rule. In other words, did the circuit court clearly err by finding that the Iberia Bank and Southland Oil debts were incurred to preserve the business and its property for a reasonable time? *See Lee*, 350 Ark. 466, 91 S.W.3d 464.

We cannot say the circuit court clearly erred. The partnership involves a multigenerational farming business. The litigation was complex, acrimonious, and protracted. Had James and Katherine not taken out these loans, it is likely that the farm would have gone into foreclosure, which would have resulted in the partnership's losing most of the value of the business. The circuit court found that these debts were incurred to maintain the farming operation and that under these specific circumstances, those actions were reasonable. We are not left with a definite and firm conviction that a mistake was made and therefore affirm on this point.

11

## C. Katherine's Personal Property

As a final argument on appeal, Shirley contends that the circuit court erred by finding that fifteen acres of land and a mobile home[5] on it were Katherine's individual property as opposed to partnership property. The circuit court found:

> The 15 acres titled to [Katherine] was [sic] acquired by her by quitclaim deed in 2001. There exists no written documentation of any agreement that this was to be partnership property, and the deed contains no limitation on [Katherine's] fee simple ownership of the property. Additionally, any other theory of attack on her title by [Shirley] is barred by the statute of limitations and laches. This acreage therefore is found to be owned by [Katherine].

We review this finding for whether it is clearly erroneous or clearly against the preponderance of the evidence. *Lee*, 350 Ark. 466, 91 S.W.3d 464.

We begin by considering whether laches or the statute of limitations barred Shirley's claim. We note that in her third amended complaint, Shirley sought a finding that this land was partnership property; she alleged that Katherine converted the property for her personal use. For the reasons previously discussed with regard to Sink Farm, we similarly hold that the circuit court erred by finding that laches and the statute of limitations barred Shirley's claim. Reaching this conclusion, we must also address whether, on the merits, the circuit court clearly erred by finding that this property was Katherine's separate property.

Katherine was deeded the fifteen acres in March 2001. This deed was executed by James, Katherine, Ann, and most notably, Shirley. Katherine testified that the conveyance

---

[5]We do not reach the merits of whether the mobile home was Katherine's separate property. The circuit court did not rule on whether the mobile home was partnership property, and Shirley abandoned any pending but unresolved claims in her notice of appeal. Failure to obtain a ruling from the circuit court on this issue precludes our review. *Meador v. Total Compliance Consultants, Inc.*, 2013 Ark. 22, 425 S.W.3d 713.

was a gift and that she never paid the partnership for the land. By contrast, Shirley claimed the partners deeded the land to Katherine with the understanding that each partner would receive a similar deed for land, which never occurred.

Arkansas Code Annotated section 4-46-204(d) provides that property acquired in the name of one partner without the use of partnership assets is presumed to be separate property. Applying this presumption, we hold the circuit court did not clearly err by finding that this property was solely Katherine's. The evidence showed that this land was a gift to Katherine alone, evidenced by the plain language of the deed, which was executed by all partners. Although Shirley presents competing testimony, the circuit court was free to believe or disbelieve the testimony and assign the weight it afforded to it. *See Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). Accordingly, we hold that the circuit court's decision to award the fifteen acres to Katherine as her separate property was not clearly erroneous and affirm on this point.

III. *The Cross-Appeal*

On cross-appeal, James and Katherine seek reversal of several of the circuit court's orders that pertain to whether Shirley should have been punished for her misconduct during the litigation. They argue that the circuit court erred by denying their request for attorney's fees and Rule 11 sanctions. Additionally, they contend the circuit court erred by refusing to hold Shirley in contempt of court for violating its orders. Finally, they argue the circuit court erred when it failed to award them damages for lost profits they suffered as a result of Shirley's conduct.

A. Attorney's Fees

James and Katherine filed three motions for attorney's fees at the conclusion of the trial. In support of their fee requests, James and Katherine emphasize the lengthy docket sheet, the voluminous pleadings and emails, the extensive number of hours of work, and Shirley's alleged misconduct during the course of the litigation. The circuit court denied their requests, and James and Katherine seek reversal of this decision. We evaluate the denial of attorney's fees for an abuse of discretion. *Dunn v. Womack*, 2011 Ark. App. 393, 383 S.W.3d 893.

An attorney's-fee award is merely permissive under Arkansas Code Annotated section 16-22-308 (Repl. 1999), and the circuit court is in a better position to make a determination as to whether fees are warranted. A review of the fee petitions demonstrates that James and Katherine never submitted time records or actual fees charged and paid. Accordingly, we hold that the circuit court did not abuse its discretion by denying James's and Katherine's requests for attorney's fees.

B. Rule 11 Sanctions

The motion for Rule 11 sanctions filed by James and Katherine was based on Shirley's actions in filing a new lawsuit in 2010 after she had received an adverse ruling in this case. In their motion, James and Katherine accused Shirley of forum shopping, arguing that the issues raised in the 2010 lawsuit were identical to those in this lawsuit. Shirley responded to the motion and denied that the issues in the 2010 lawsuit were identical to those in this case. She argued that while the underlying facts were the same, she sought different relief than what she requested in this case.

The circuit court in the 2010 lawsuit denied Shirley's request to proceed on her claim and transferred the case to Judge Smith. The court found that the "request for the injunction involves the same property that [was] at issue" and that "any request for an injunction should have been brought up in the order for delivery hearing." The court did not go so far as to find that Shirley had an improper motive for filing the 2010 lawsuit, it merely concluded that the issues should have been raised in this case.

The pertinent portion of Arkansas Rule of Civil Procedure 11 provides as follows:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Whether a violation has occurred is a matter for the circuit court to determine, and this determination involves matters of judgment and degree. *Ward v. Dapper Dan Cleaners & Laundry*, 309 Ark. 192, 828 S.W.2d 833 (1992). Whether a violation of Rule 11 has occurred is evaluated using an abuse-of-discretion standard. *Id*.

Rule 11 sanctions are premised on the concept that one should be punished for pursuing relief when one has an improper motive. The circuit court found no improper motive; it found only that Shirley should have sought her relief in this case. The circuit court was in a superior position to evaluate Shirley's motives because of its familiarity with the facts and circumstances at play. Accordingly, we hold that the circuit court did not abuse its discretion by denying the request for Rule 11 sanctions.

15

## C. Contempt

James and Katherine filed two separate motions seeking to have Shirley held in contempt due to what they considered to be Shirley's disregard for the circuit court's orders. The first motion pertained to her conduct in filing the 2010 lawsuit. The second motion was based on Shirley's alleged refusal to deposit certain funds into the court's registry despite being ordered to do so. The circuit court denied the contempt motions, and James and Katherine seek reversal.

James and Katherine admit that they pursued a civil-contempt finding against Shirley. Civil contempt protects the rights of private parties by compelling compliance with court orders made for the benefit of the parties. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Our standard of review for civil contempt is whether the findings of the circuit court are clearly against the preponderance of the evidence. *Id.*

Contempt is a matter between the court and the litigant and not between the two opposing litigants. *Erskin v. Stout*, 2015 Ark. App. 533, 472 S.W.3d 159 (2015). The circuit court, because of its intimate familiarity with the proceedings, is best equipped to decide whether contempt is an appropriate sanction. The circuit court's finding is not clearly against the preponderance of the evidence. We therefore affirm.

## D. Lost Profits

For their last point on appeal, James and Katherine argue that the circuit court erred when it refused to award them damages for lost profits based on Shirley's misconduct. We reverse if the circuit court's finding is clearly erroneous. *Lee*, 350 Ark. 466, 91 S.W.3d 464.

James and Katherine's counterclaim against Shirley included a claim for breach of contract. Under limited circumstances, a court may award lost profits as damages for a breach of contract. However, proof of lost profits must be shown by evidence that makes it reasonably certain the amount the party claiming the loss would have made. *Robertson v. Ceola*, 255 Ark. 703, 501 S.W.2d 764 (1973). A party attempting to recover anticipated profits under a contract must present a reasonably complete set of figures and not leave the fact-finder to speculate as to whether there would have been any profits. *Am. Fid. Fire Ins. Co. v. Kennedy Bros. Constr., Inc.*, 282 Ark. 545, 670 S.W.2d 798 (1984).

James and Katherine assign fault to Shirley for her alleged misconduct during the pendency of the litigation. They specifically highlight her unwillingness to sell crops at certain times and to sign certain paperwork, which they claim resulted in lower sales prices on crops and higher interest and fees on loans. They claim they were entitled to damages in the amount of $175,157.40 as lost profits.

Our caselaw is clear that damages for lost profits cannot be based on speculation. Here, the circuit court specifically found that the parties had a long-established routine of lax accounting practices that made any exact accounting or proof of damages to any of the parties virtually impossible to accurately determine. Furthermore, the only evidence presented to support the lost-profits claim came from James, Katherine, and Don King of Iberia Bank. James and Katherine greatly emphasize King's testimony, but King merely testified that he did not recollect any time that James and Katherine objected to paying Iberia Bank and that any attorney's fees incurred did not stem from James's and Katherine's conduct. The circuit court was free to believe or disbelieve this testimony and assign the

17

weight it afforded to it. *See Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). With these standards in mind, we simply cannot say that the circuit court clearly erred by refusing to award damages for lost profits; we therefore affirm on this point.

IV. *Conclusion*

Affirmed in part on direct appeal; reversed and remanded in part with instructions on direct appeal; affirmed on cross-appeal.

VIRDEN, J., agrees.

BROWN, J., concurs.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant/cross-appellee.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellees/cross-appellants.