Cite as 2024 Ark. App. 261

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-22-304

| | |
|---|---|
| | Opinion Delivered April 17, 2024 |
| KATHERINE LYLE HARBISON, EXECUTRIX OF THE ESTATE OF JAMES WALLER LYLE, DECEASED<br><br>APPELLANT<br><br>V.<br><br><br>SHIRLEY LYLE HITT<br><br>APPELLEE | APPEAL FROM THE JACKSON COUNTY CIRCUIT COURT [NO. 34PR-14-24]<br><br>HONORABLE MICHELLE C. HUFF, JUDGE<br><br>APPEAL DISMISSED |

**KENNETH S. HIXSON, Judge**

This is the second appeal in this case that is related to a long-running dispute over the dissolution of a family partnership. In the first appeal, which was taken from an order of the Jackson County Circuit Court that dissolved the partnership, we disposed of the various issues raised on direct appeal and on cross-appeal related to the disposition of the partnership property and other ancillary matters. *See Hitt v. Lyle*, 2020 Ark. App. 124, 596 S.W.3d 540 (hereinafter sometimes referred to as "the circuit court case"). The instant appeal is from an order of the probate division of the Jackson County Circuit Court (hereinafter sometimes referred to as "the probate case"). In this appeal, appellant Katherine Lyle Harbison, executrix of the estate of James Waller Lyle (hereinafter "the James Lyle estate"), appeals the probate court's decision that ordered the estate to pay appellee Shirley

Lyle Hitt (hereinafter "Shirley") $67,073.08 for Shirley's claim against the estate. On appeal, the James Lyle estate raises numerous arguments, including that Shirley's claim against the estate was barred by res judicata and collateral estoppel because it involved a claim that either was, or should have been, litigated in the circuit court case; that the document claimed by Shirley to support her claim was improperly admitted over objection into evidence because it was hearsay and was not authenticated; that Shirley's claim should have been dismissed for failure to comply with the Probate Code; and that Shirley failed to produce sufficient evidence to support her claim. We, however, find it unnecessary to address any of these issues due to our determination that the James Lyle estate voluntarily paid and satisfied Shirley's probate claim, which, in light of our settled case law, constitutes a waiver to an appeal and requires that this appeal be dismissed.

*Discussion*

The pertinent facts and procedural history are as follows. In 2003, Lyle Farms Partnership was formed by three siblings—Katherine Lyle Harbison, James Waller Lyle, and Shirley Lyle Hitt—and their mother, Ann Lyle.[1] In 2006, Shirley gave written notice of her intent to dissolve the partnership pursuant to the terms of the partnership agreement. In 2007, Shirley filed a complaint in the circuit court case against the other three partners wherein she sought to dissolve the partnership, to liquidate its assets, and an accounting. In 2010, Shirley filed a third amended complaint in the circuit court case alleging, among other

---

[1]The partnership agreement was backdated to 1986.

2

things, that although property known as "Sink Farm" was deeded solely to James in 1986, it should be declared partnership property because partnership funds were used to purchase it. Shirley alleged further in the third amended complaint that the three defendants had misappropriated and failed to share partnership income with her. There was also a counterclaim filed in the circuit court case in which the three defendants sought damages against Shirley for breach of contract, breach of fiduciary duty, conversion, and misappropriation.

The circuit court held a hearing in the circuit court case over the course of several days in 2011 and 2012, but for whatever reason, it did not enter an order until 2017. In the intervening years, brother James Lyle died,[2] and on March 12, 2014, Katherine, as executrix of James Lyle's estate, filed a petition for probate of will and appointment of personal representative in the probate case.[3] On March 27, 2014, Shirley filed an affidavit in the probate case to claim against brother James Lyle's estate (recall that although the circuit court held a hearing in 2011 and 2012, the circuit court did not enter an order until 2017). In Shirley's claim against James's estate, she again asked to dissolve and liquidate the partnership; asked to reform the Sink Farm deed and declare it is partnership property to be partitioned or liquidated as such; and also made a claim for her one-fourth partnership

---

[2]Mother Ann Lyle also died during the circuit court litigation. Shirley and Katherine are now the only surviving members of the partnership.

[3]On April 14, 2014, the probate court entered an order admitting James's will to probate and appointing Katherine executrix.

portion of income derived from the Sink Farm property from 2005 through 2009.[4]  On March 18, 2015, the James Lyle estate moved to deny Shirley's affidavit to claim against the estate, asserting that the issues raised therein remained under advisement in the still-pending circuit court case.

Finally, on April 13, 2017, the circuit court entered an amended order in the circuit court case.  The amended order found, *inter alia*, that the Sink Farm property was James's sole property and not the property of the partnership.  The order also dissolved the partnership and ordered that the partnership land be partitioned equally among the partners and sold.  The circuit court also found that the parties had a long-established routine of lax accounting practices, that each of the siblings paid much of their living expenses from the partnership bank accounts, and that this practice made any exact accounting or proof of damages virtually impossible to accurately determine.

Shirley appealed from the April 13, 2017, amended order in the circuit court case, and there was also a cross-appeal filed.  In *Hitt*, *supra*, we affirmed all the issues on direct appeal and on cross-appeal with the exception of a single issue on direct appeal regarding the ownership of the Sink Farm property.  We noted that the Sink Farm property was purchased from the partnership account, which raised the presumption that it was partnership property.  We concluded our discussion of that point with this holding:

> We are left with a definite and firm conviction that the evidence James submits does not sufficiently rebut the presumption that Sink Farm was partnership property.

[4]The income produced by the Sink Farm was allegedly retained by James Lyle during his lifetime and not shared with any of the partners.

4

> The evidence in support of the presumption is overwhelming. We therefore hold that the circuit court clearly erred in awarding Sink Farm to James as his separate property. We reverse and remand this issue to the circuit court for entry of an order finding that Sink Farm is partnership property and directing that it be disposed of accordingly.

*Hitt*, 2020 Ark. App. 124, at 10, 596 S.W.3d at 547–48.[5]

After our *Hitt* mandate in the circuit court case was issued and the case remanded to the circuit court, proceedings on Shirley's affidavit of claim against the James Lyle estate resumed in the probate case. On October 7, 2021, the James Lyle estate filed a motion to dismiss Shirley's affidavit of claim, arguing that the claim was based entirely on the claims that had already been litigated in the *Hitt* circuit court case and that the claim was barred by res judicata and collateral estoppel.

A hearing on Shirley's probate claim, at which both Shirley and Katherine testified, was held in the probate case on February 8, 2022. At the hearing, the James Lyle estate argued unsuccessfully that Shirley's claim was barred by res judicata. Over the James Lyle estate's objection, Shirley introduced a twelve-page excerpt from a five-hundred-page accounting that had been prepared by Jones and Co., Ltd., in the circuit court case that purported to show that the total income derived from the Sink Farm property between 2006 and 2009 was $268,292.34.[6] Because the Sink Farm property had been held to be partnership property in our *Hitt* decision in the circuit court case, Shirley requested one-

---

[5]The issues that were affirmed in *Hitt*, *supra*, are not pertinent to our discussion herein.

[6]This exhibit was designated as Claimant's Exhibit 1.

fourth of her share of the Sink Farm profits, or $67,073.08. At the conclusion of the probate hearing, the probate court ruled from the bench that Shirley had a valid claim against the James Lyle estate in this amount.

On February 25, 2022, the probate court entered an "Order Allowing Shirley Hitt's Claim" wherein the probate court made these findings:

1. Shirley Hitt's claim against the Estate is not barred by res judicata.

2. Shirley Hitt's claim against the Estate filed March 27, 2014 meets the substantial compliance requirements of the probate code by putting the Estate on notice of the claim.

3. Over the objection of the executor, the Court admitted Claimant's Exhibit 1 and heard testimony from Shirley Hitt on the figures contained in Claimant's Exhibit 1 as the specific basis for her claim against the Estate. Claimant's Exhibit 1 and the testimony of Shirley Hitt met her burden of proof to present a prima facie claim against the Estate in the amount of $67,073.08.

4. The executor did not rebut Shirley Hitt's prima facie claim with any evidence of an offset or other defense.

5. The executor raised statute of limitations defenses which were considered and rejected by the Court.

6. The non-claim period for the Estate has expired.

7. Based on the Accounting filed September 17, 2021, and a review of the other claims against the Estate, the Estate had adequate assets to pay all claims.

Accordingly, based on the findings above and the pleadings, exhibits, arguments, and testimony before the Court at a hearing on February 8, 2022, the Court orders that Shirley Hitt's claim against the estate in the amount of $67,073.08 is valid and shall be paid by the executor from the assets of the Estate.

After the probate court entered its order affirming Shirley's claim but before the James Lyle estate filed a notice of appeal in the probate case, the parties entered an "Agreed

Order" in the circuit court case, signed and approved by counsel for both parties, to divide

the partnership bank account.[7]  The Agreed Order in the circuit court case provides:

> 1.  The Simmons Bank account presently contains funds of the Lyle Farm Partnership totaling $402,378.14.
>
> 2.  *The parties have reached an agreement on the distribution of these funds*, to wit $172,917.61 payable to Shirley Hitt, $213,574.80 payable to Katherine Harbison, and $15,885.73 to be held in the Simmons Account pending the resolution of Charlotte Lyle's dower claim against the Estate of James Lyle.
>
> 3.  *This distribution includes* payment for and satisfaction of the $7,000 attorney fee award in favor of Shirley Hitt dating back to the bankruptcy, *the claim for $67,073.08 by Shirley Hitt against the Estate of James Lyle*, and her partnership interest of $98,844.53.  *The payment to Katherine Harbison represents her partnership interest* in the amount of $98,844.53 and the partnership interests of the Ann Lyle Estate in the amount of $98,844.54, and the James Lyle Estate in the amount of $98,844.54, *less the claim against the Estate by Shirley Hitt of $67,073.08*, and the amount retained in the Simmons Account pending the resolution of Charlotte Lyle's dower claim in the amount of $15,885.73.
>
> 4.  *By the signature of counsel for the parties, this is an agreed distribution.*
>
> 5.  The account shall remain open for future deposits from the sale of the remaining Partnership real estate and personal property and any other Partnership income.
>
> WHEREFORE, Simmons Bank is directed to issue checks from the Lyle Farm Partnership account for (1) $172,917.61 payable to Shirley Hitt in care of her attorney, Tim Cullen; and (2) $213,574.80 payable to Ogles Law Firm Trust Account.

(Emphasis added.)  As can be readily ascertained from the Agreed Order, Shirley's claim for

$67,073.08 against the James Lyle estate, which represents her 25 percent interest in the

---

[7]To give the Agreed Order proper context, note that Katherine is the sole beneficiary of the estates of both James Lyle and Ann Lyle—the two deceased partners in the partnership.

7

profits from the Sink Farm operations as ordered by the probate court's February 25, 2022, order, has been satisfied pursuant to an agreement of the parties.

After the Agreed Order disbursing the partnership funds was entered, the James Lyle estate filed its notice of appeal in the probate case on March 3, 2022. However, on March 16, 2022, Shirley filed in the probate court a "Satisfaction of Shirley Hitt's Claim Against the Estate," which provides:

1. Shirley Hitt made a claim against the Estate of James Waller Lyle in the amount of $67,073.08.

2. The Estate contested the claim.

3. The Probate Court heard evidence and argument on the contested claim at a hearing on February 8, 2022.

4. At the conclusion of the February 8, 2022 hearing, the Probate Court ruled in Shirley Hitt's favor and allowed her claim in the amount of $67,073.08. See *Order Allowing Shirley Hitt's Claim* dated February 25, 2022, at Exhibit A.

5. By agreement of the parties, Shirley Hitt's claim against the Estate of James Waller Lyle was paid from James Lyle's share of partnership funds in partnership bank account. Katherine Harbison (who is also the executor of James Lyle's estate) specifically agreed to the distribution and payment of Shirley Hitt's claim out of the funds in the partnership bank account. See *Agreed Order* in case 34CV-07-77 dated February 27, 2022 attached as Exhibit B and incorporated by reference.

6. Based on the above agreed payment from partnership funds belonging to James Lyle, Shirley Hitt's allowed claim against the Estate of James Lyle in the amount of $67,073.08 is paid in full and fully satisfied.

On March 21, 2022, the James Lyle estate filed in the probate court a "Response to Shirley Hitt's Satisfaction of Claim" wherein it essentially argued that the $67,073.08 payment was involuntary and did not constitute the satisfaction of the judgment that bars

8

future litigation. The estate specifically stated that "[t]he Claim was paid pursuant to [the probate court's] order on February 25, 2022, where the executrix was ordered to pay the Claim." Attached to the James Lyle estate's response was a chain of emails that were exchanged between the respective attorneys between the date of the probate court's oral ruling at the hearing and the formal entry of its order, which the James Lyle estate claimed demonstrated that "the parties' attorneys agreed to enter an order [in the circuit court case] to avoid any confusion" and to avoid a conflict between the circuit and probate courts. In Shirley's reply to the James Lyle estate's response, Shirley asserted that, notwithstanding the emails, her probate claim had been voluntarily paid, that the James Lyle estate did not post a supersedeas bond or otherwise make any efforts to avoid paying the claim while the appeal is pending, and that the James Lyle estate's voluntary payment of the claim moots the estate's appeal. In Shirley's appellate brief, she again argues that this appeal is moot and therefore must be dismissed, and we agree with Shirley's argument.

The James Lyle estate has now appealed from the probate court's February 25, 2022, order allowing Shirley Hitt's claim. However, as we stated previously, we must dismiss the appeal based on our conclusion that the James Lyle estate has voluntarily paid Shirley's claim against the estate in the amount of $67,073.08. We have repeatedly held that the voluntary satisfaction of a judgment constitutes a waiver to an appeal of that judgment. *See Sherman Waterproofing, Inc. v. Darragh Co.*, 81 Ark. App. 74, 98 S.W.3d 446 (2003); *DeHaven v. T&D Dev., Inc.*, 50 Ark. App. 193, 901 S.W.2d 30 (1995); *Lytle v. Citizens Bank of Batesville*, 4 Ark. App. 294, 630 S.W.2d 546 (1982).

9

In *Sherman Waterproofing*, the appellant appealed from the grant of summary judgment on a promissory note in favor of the appellee, arguing that material issues of fact remained and that the circuit court therefore erred in granting summary judgment. However, because we concluded that the judgment had been voluntarily paid by the appellant, we held that the appeal was moot and we dismissed the appeal. In *Sherman Waterproofing*, we raised the issue of mootness on our own motion and concluded that, in the absence of any explanation for the payment of a judgment, we would consider it as being voluntarily paid, thus rendering the issue involving the judgment moot. And in *Hall v. Hall*, 2012 Ark. 429, the supreme court reaffirmed this principle and held that even a *partial* payment of the judgment was a voluntary acquiescence to the judgment and constituted a waiver of the right to appeal.

Our opinion in *Hendrix v. Winter*, 70 Ark. App. 229, 16 S.W.3d 272 (2000) (per curiam), is also instructive. In *Hendrix*, a motion to dismiss the appeal was filed by the appellee on the basis that the appellant had satisfied the judgment. The appellant filed a response admitting that he had satisfied the judgment but alleging that his attorney had entered into an agreement with the appellee's attorney to the effect that appellee's attorney would "hold" the funds in satisfaction of the judgment pending the outcome of the appeal and that, upon conclusion of the appeal, the funds would be released to the party who prevailed.[8] In dismissing the appeal in *Hendrix*, we wrote:

> Turning to the merits of the matter, we have decided that the motion to dismiss this appeal must be granted. In *DeHaven v. T&D Dev., Inc.*, 50 Ark. App. 193, 901 S.W.2d 30 (1995), we held that if any appellant voluntarily pays a judgment, then

[8]The appellee's attorney in *Hendrix* denied any such arrangement.

the appeal from that judgment would be moot, but that if payment of the judgment is involuntary, an appeal would not be precluded. In Hendrix's response to Winter's motion in the case at bar, he does not contend that his payment of the judgment was involuntary. He alleges that the existence of the judgment on the record, constituting a lien on his land, created a financial hardship on his timber business due to his inability to obtain a bank loan. Consequently, he chose to pay the judgment debt in exchange for a satisfaction of it. In *DeHaven*, we quoted from *Lytle v. Citizens Bank of Batesville*, 4 Ark. App. 294, 630 S.W.2d 546 (1982):

> [I]n the majority of jurisdictions, the effect of the payment of a judgment upon the right of appeal by the payer is determined by whether the payment was voluntary or involuntary. In other words, if the payment was voluntary, then the case is moot, but if the payment was involuntary, the appeal is not precluded. The question which often arises under this rule is what constitutes an involuntary payment of a judgment. For instance, in some jurisdictions the courts have held that a payment is involuntary if it is made under threat of execution or garnishment. There are other jurisdictions, however, which adhere to the rule that a payment is involuntary only if it is made after the issuance of an execution or garnishment. Another variation of this majority rule is a requirement that if, as a matter of right, the payer could have posted a supersedeas bond, he must show that he was unable to post such a bond, or his payment of the judgment is deemed voluntary. . . .

*DeHaven*, 50 Ark. App. at 193, 901 S.W.2d at 32.

Hendrix does not allege that an execution or garnishment on the judgment against him had been either threatened or issued at the time he paid the judgment. He had an absolute right to post a supersedeas bond in this court that would have stayed enforcement of the judgment pending his prosecution of the appeal. He did not do so, and he does not allege that he was unable to post such a bond. From the fact that Hendrix had the money to pay the judgment in full, it is obvious to us that he could have obtained the approval by this court of a supersedeas bond by filing the appropriate bond with the clerk of this court, accompanied by a certificate of deposit, certified check, cash, bank money order, corporate surety, or irrevocable letter of credit, in an amount sufficient to guarantee his payment of "all costs and damages that shall be affirmed against appellant on appeal; or if appellant fails to prosecute the appeal to a final conclusion, or if such appeal shall for any cause be dismissed, that appellant shall satisfy and perform the judgment, decree or order of the trial court." Ark. R. App. P. 8(c); *see also Home Mut. Fire Ins. Co. v. Jones*, 62 Ark. App. 182, 969 S.W.2d 675 (1998); and *Schramm v. Piazza*, 53 Ark. App. 99, 918 S.W.2d 733 (1996).

*Hendrix*, 70 Ark. App. at 231–32, 16 S.W.3d at 274–75.

In response to Shirley's claim that this appeal should be dismissed, the James Lyle estate asserts that the $67,073.08 payment to Shirley was not a voluntary payment, nor was it a payment of Shirley's probate claim. We cannot agree with either of the arguments. The Agreed Order executed by the parties in the circuit court case plainly stated that the distribution to Shirley included "the claim for $67,073.08 by Shirley Hitt against the Estate of James Lyle" and that the distribution to Katherine represented the other three partnership interests in the account, including the James Lyle estate interest "less the claim against the [James Lyle] Estate by Shirley Hitt of $67,073.08." Thus, Shirley's probate claim was clearly satisfied from the James Lyle estate's share of the partnership funds. And although the James Lyle estate contends that the email exchanges between counsels demonstrates that the payment was involuntary, our review of these emails shows otherwise. In these emails the attorneys discuss whether to pay Shirley's probate claim out of Katherine's share of the Simmons partnership account, and the James Lyle estate's counsel stated, "How else would it be paid?" Later in the email exchange, the James Lyle estate's counsel stated, "We can either disburse or just look at it for another year. Either way is fine with me." By way of the subsequently entered Agreed Order, the parties decided and voluntarily agreed to make disbursements that included a payment to Shirley for her $67,073.08 probate claim.

The James Lyle estate agreed to pay Shirley $67,073.08 and makes no claim that an execution or garnishment on the judgment had been either threatened or issued at the time

12

of payment. Nor did the James Lyle estate post a supersedeas bond, and it makes no claim that it could not have posted such a bond. We thus conclude from these circumstances that the James Lyle estate's payment of the precise amount the probate court ordered it to pay Shirley was a voluntary payment and a satisfaction of the judgment; accordingly, we dismiss this appeal.

Appeal dismissed.

WOOD and BROWN, JJ., agree.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Tim Cullen*, for appellee.